# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

CINDY PAPPERT, WILLIAM MARTIN, and
CATHERINE FOSTER, individually and on
behalf of all others similarly situated,

                              Plaintiffs,

    v.

CONAGRA BRANDS, INC.,

                              Defendant.

Case No.      1:24-cv-04835

**FIRST AMENDED CLASS ACTION
COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

## NATURE OF THE ACTION

1.      As reported by the Fisheries Division of the National Oceanic and Atmospheric Administration ("NOAA"), fraud in the seafood supply chain is widespread. The problems range from misidentification and substitution of fish species to utilizing a number of tricks to artificially add weight to fish (commonly referred to as "short weighting" in the seafood industry).

2.      This class action against Defendant Conagra Brands, Inc. involves the widespread use of short weighting on a massive scale.

3.      Defendant claims that its popular Van de Kamp and Ms. Paul's brand frozen fish products are "100% Whole Fish." That statement is false. The truth is, Defendant pumps up those fish with an industrial filler called sodium tripolyphosphate ("STPP") and extra water to artificially add weight, which may then ooze out as a white goo when the fish is cooked. STPP, a suspected neurotoxin, is typically used to manufacture things like rubber, paint, and antifreeze. STPP also is used by unscrupulous businesses in the seafood industry to engage in short weighting. That is the case here.

4.      Plaintiffs bring this false advertising action on behalf of themselves and other purchasers of the subject products.

## PARTIES

5.      Plaintiff William Martin is domiciled in California. Plaintiff has purchased the subject Van de Kamp brand products several times over the last few years, including purchases made at one or more California supermarkets in 2022. Mr. Martin may be referred to later in this complaint as a "California Plaintiff."

6.      Plaintiff Cindy Pappert is domiciled in New York. Plaintiff has purchased the subject Van de Kamp brand products several times over the last few years, including purchases made at one or more New York supermarkets in 2023. Ms. Pappert may be referred to later in this complaint as a "New York Plaintiff."

7.      Plaintiff Catherine Foster is domiciled in Massachusetts. Plaintiff has purchased the subject Van de Kamp and Ms. Paul's brand products several times over the last few years,

including purchases made at one or more Massachusetts supermarkets in 2023. Ms. Foster may be referred to later in this complaint as a "Massachusetts Plaintiff."

8. Each Plaintiff reviewed and relied on the product packaging before buying the product at issue, including the representation that the products were 100% whole fish.

9. For each Plaintiff, if he or she had known the products were falsely labeled, the Plaintiff would not have bought them, or would have paid less.

10. Each Plaintiff remains interested in purchasing the products at issue. However, they cannot know for certain whether the false labeling has been or will be corrected. The composition of the products may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiffs will be unable to make informed decisions about whether to purchase the subject products. Plaintiffs are further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

11. Defendant Conagra Brands, Inc. is a Delaware corporation with its principal place of business in Chicago. Defendant manufactures, advertises, distributes, and sells the subject products. Each of the subject products includes Defendant's logo and name. Defendant is responsible for the labeling of the subject products, and their formulation.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

13. This Court has personal jurisdiction over Defendant. Defendant is incorporated in Delaware and has its principal place of business in Illinois. A substantial portion of the events giving rise to the claims alleged here occurred in this state.

14. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## I. A Brief Primer On Sodium Tripolyphosphate

15. Sodium Tripolyphosphate ("STPP") is a colorless, tasteless, and odorless inorganic compound that is produced on a large scale as a component of many industrial products.

$$\left[ \phantom{} ^{-}O-\overset{\overset{O}{\parallel}}{\underset{\underset{O^{-}}{}}{P}}-O-\overset{\overset{O}{\parallel}}{\underset{\underset{O^{-}}{}}{P}}-O-\overset{\overset{O}{\parallel}}{\underset{\underset{O^{-}}{}}{P}}-O^{-} \right] \left[ Na^{+} \right]_{5}$$

16. STPP is primarily used for commercial detergents. It also is used when manufacturing ceramics, leather tanning, flame retardants, rubber, paint, and antifreeze.

17. In large quantities, STPP is a suspected neurotoxin, as well as a registered pesticide and known air contaminant.

18. Because it is not very water soluble, wastewater treatment does not remove significant amounts of STPP. Further, STPP reacts to water by breaking down into phosphate, which is assimilated into the natural phosphorus cycle. As a result, STPP contributes to the eutrophication of fresh water sources, a phenomenon typically associated with poorly treated sewage water, industrial wastewater, and fertilizer runoff.[1]

---

[1] "Eutrophication" is a general term describing a process in which nutrients accumulate in a body of water, resulting in the depletion of oxygen and an increase in algal blooms and bacterial growth.



*The eutrophication of the Potamac River, caused from phosphate run-off, is evident from the bright green bloom of algae.*

## II.  The Use Of STPP To Commit Seafood Fraud

19.  As explained by the NOAA's Fisheries Division, illegal scams are common enough in the seafood industry to have generated the term, "seafood fraud."

20.  One obvious form of seafood fraud is substitution.  No business would be foolish enough to try to pass chicken as beef, but fish is a different story.  Fish and other seafood items are often mislabeled as something they are not.  In 2010, for example, the former CEO of Sterling Seafood Corporation confessed that for two full years, he purposely imported cheap catfish and switched its nametag to a pricier "grouper."

21.     A less known, but far more common form of seafood fraud is called "short weighting."  This is when processors misrepresent the weight of a seafood product through practices such as overglazing or soaking.

22.     When a processor uses excess ice (overglazing) or additives (soaking) and includes that weight with the net weight of the seafood, that's a violation of the law.  Consumers should pay for the weight of the seafood alone.  Short-weighting charges consumers more for less seafood.

23.     STPP can be used for short-weighting.  STPP treated fish is stored in an STPP soaking solution, which encourages cells to soak up water.  This water retention makes the fish heavier when it is weighed.

24.     The amount of extra weight added by STPP processing varies depending on the concentration of the solution, but the average is 13%.

25.     Not only do consumers end up paying more money for STPP- treated seafood because of the added water weight, but the seafood decreases in size and changes in texture when the water is cooked out.  Excessive STPP  treatment destroys the quality of the protein during the cooking process and can create a "soapy" flavor and mushy texture.

26.     Fish "soaked" with STPP often oozes a milky white substance when it is cooked:



**III.** **Due to STPP Soaking, The Labeling of The Subject Products Has The Capacity Or Tendency To Deceive Or Confuse Reasonable Consumers**

27.     ***Products at Issue:***  Defendant manufactures, advertises, distributes, and sells certain Van de Kamp and Ms. Paul's brand frozen fish products.  The subject products at issue are as follows:

Van de Kamp's Products: Crispy Battered Fillets, Crispy Haddock Fillets, Crunchy Breaded Fillets, Beer Battered Fillets, and Van de Kamp's Fish Sticks.

Mrs. Paul's Products: Crispy Battered Fillets, Crunchy Breaded Fillets, Beer Battered Fillets, Lightly Breaded Haddock Fillets, and Fish Sticks.

28.     ***Relevant Time Period:*** The deceptive packaging at issue here was consistent during the last four years, at least.

29.     ***Misrepresentations at Issue:***  The labeling of each of the subject products states that the products are "100% Whole Fish Fillets," for example, like in the pictures below:





30.     Notably, the "100% Whole Fish" statements are not disclaimed or modified anywhere on the products' labels.  No asterisk or marking appears by the words "100% Whole Fish" that would suggest to a reasonable consumer that they need to look elsewhere on the label to understand the true meaning of "100% Whole Fish."  Because the "100% Whole Fish" statement appears effectively as the main, stand-alone claim on the front of the labels of the products, reasonable consumers interpret it at face value: that the products are literally composed of 100% Whole Fish, without any fillers or added water.

31.     For consumers that look elsewhere on the products' labels, the "100% Whole Fish" statement is reinforced by other statements.  For instance, the front labels also state that the fish in the products is "Wild Caught," reinforcing the portrayal of the product containing 100% whole fish, as it is found in the "wild."

32.    The back packaging of each of the subject products is likewise the same in all material respects.  An example of the back of the products is depicted below:



33.    Even consumers that look to the back of the products labels would see statements meant to reinforce the false representation on the front that the products contain "100% whole fish."  For instance, the back labels state that in large, prominent bold lettering that the products are "good for you," "good for the environment," "sustainable," "traceable," and "wild caught." Each of these statements reinforces the notion that the products are 100% whole fish, without fillers, as they portray the fish as coming from the "wild," natural, good for the environment, and good for consumers' health.  But STPP and added water pumped into the fish at Defendant's processing centers do not come from the wild, are not healthy, are not good for the environment, and certainly are not themselves "fish."

34.    The only mention of STPP on the products' labels is buried in fine print in a manner meant to ensure that as few consumers as possible ever see it, with the reference itself

being misleading.  By zooming into the image of the back of the product labels above, one can see that the listed ingredients are depicted as follows in small text.  Notably, the image below has been significantly expanded for legibility.



35.      For each product, the ingredients list states that the products contain "sodium tripolyphosphate (added to retain moisture)," as shown in the picture above.  But the STPP in the products is not added to retain the natural water or moisture of the fish as it was found in the "wild," but rather to bulk up the products' weight and size and retain the water that has been artificially pumped into the products at Defendant's processing plants.  The disclosure in tiny print on the back of the products' labels about the presence of STPP does not dispel or disclaim to reasonable consumers the bold, prominent statements on the front and back of the products suggesting that the products are composed of "100% Whole Fish."  A reasonable consumer has no reason to check what a product is "composed" of when the product labeling is replete with representations that it is "100% Whole Fish," healthy, and caught in the wild.  Any consumer would reasonably assume without having to check parentheticals in the ingredient list that the

products contain 100% Whole Fish, and not *some* fish *and* STPP *and* water pumped into the products in a processing plant.

36. ***How/Why The Labeling Is Misleading*:** The term "100% Whole Fish Fillet" is misleading because, in fact, the products are fish combined with STPP and water, which is used as a filler to add weight. The water and white substance oozing from STPP-infused seafood shown in Paragraph 26 above is not fish—it was *added* to the fish by way of an STPP soak, and the white substance is STPP and added water. In other words, the subject products are not "100% Whole Fish Fillets," but instead are fish *and* water *and* STPP. STPP and water are therefore added to the fish; they are not part of the fish itself.

## CLASS ALLEGATIONS

37. ***Class Definition*:** Plaintiffs bring this action on behalf all people the following classes and subclasses:

> Nationwide class: all people in the United States who purchased a subject product for personal or household use during the last four years.

> California class: all people in California who purchased a subject product for personal or household use during the last four years.

> Massachusetts class: all people in Massachusetts who a subject product for personal or household use during the last four years.

> New York class: all people in New York who purchased a subject product for personal or household use during the last four years.

38. Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

39. Specifically excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

40. ***Numerosity.*** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the

Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

41.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

(a)     Whether STPP and water are fillers in the subject products;

(b)     Whether the product packaging has the tendency or capacity to deceive or confuse a reasonable consumer;

(c)     Whether Defendant intended to deceive consumers;

(d)     Whether Defendant is liable to Plaintiff and Class members under the causes of action alleged in this complaint; and

(e)     Whether Plaintiff and Class members are entitled to any of the forms of relief they seek in this action.

42.     ***Typicality.***  The claims of the Plaintiffs are typical of the claims of the Classes in that Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

43.     ***Adequacy***.  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

44.     ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitive litigation and duplicative

litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

45.     Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

46.     Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Members of the Classes and will likely retain the benefits of its wrongdoing.

### COUNT I
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

47.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

48.     The California Plaintiff brings this cause of action individually and on behalf of the California subclass.

49.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

50.     Defendant acted with knowledge and intent.

51.     The California Plaintiff alleges a claim under all three prongs of the UCL.

52.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

53.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

54.     The California Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

55.     As a direct and proximate result of Defendant's unfair and deceptive practices,

Plaintiffs and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

56.     Plaintiffs and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and class members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

57.     Equitable relief is appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

58.     The California Plaintiff seeks all relief available under the UCL.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code. §§ 17500, et seq.**

59.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

60.     The California Plaintiff brings this cause of action individually and on behalf of the California subclass.

61.     Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by engaging in the conduct alleged above.

62.     Defendant knew or should have known that its conduct was false and/or misleading.

63.     Defendant knew or should have known that its conduct was false and/or misleading.

64.     Plaintiffs lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

65.     Plaintiffs and class members have suffered harm as a result of Defendant's violations of the FAL.

66.     The California Plaintiff seeks all available relief under the FAL.

**COUNT III**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

67.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

68.     The California Plaintiff brings this cause of action individually and on behalf of the California subclass.

69.     Defendant is a "person" as defined by California Civil Code § 1761(c).

70.     Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

71.     For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

72.     Plaintiffs provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

73.     Defendant's unfair and deceptive acts or practices occurred repeatedly in

Defendant's trade or business.

74. Defendant acted with knowledge and intent.

75. As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

76. With respect to the CLRA claim, Plaintiffs allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

77. As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

78. The California Plaintiff seeks all available relief under the FAL.

<u>**COUNT IV**</u>
**Violations of New York General Business Law § 349**

79. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

80. The New York Plaintiffs bring this cause of action individually and on behalf of the New York subclass.

81. GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

82. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

83. New York class members are consumers who purchased products from Defendant for their personal use.

84. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

85. The foregoing deceptive acts and practices were directed at consumers.

86. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been

truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

87.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and the New York class members have sustained from having paid for and used Defendant's Products.

88.     As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

89.     The New York Plaintiffs seek all available relief under GBL § 349.

**COUNT V**
**Violations of New York General Business Law § 350**

90.     Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

91.     The New York Plaintiffs bring this cause of action individually and on behalf of the New York subclass.

92.     GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

93.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 350.

94.     Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

95.     Plaintiff and the New York class members are consumers who purchased products from Defendant for their personal use.

96. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York class members been apprised of these facts, they would not have purchased the Products.

97. The foregoing deceptive acts and practices were directed at consumers.

98. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 350.

99. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Teitler and the New York class members have sustained from having paid for and used Defendant's Products.

100. As a result of Defendant's violations, Plaintiff and the New York class members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

101. The New York Plaintiffs seek all available relief under GBL § 350.

<u>**COUNT VI**</u>
**Violations of the Mass. Gen. Laws Chapter 93A, § 2**

102. Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

103. The Massachusetts Plaintiff brings this cause of action individually and on behalf of the Massachusetts subclass.

104. Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

105. Plaintiff, members of the Massachusetts Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

106. Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

107. The Products constitute property under Mass. Gen. Laws Ch. 93A.

108. Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

    a. Misrepresenting the approval or certification of goods;

    b. Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

    c. Representing that goods are of a particular standard, quality, or grade, if they are of another;

    d. Disparaging the goods, services, or business of another by false or misleading representation of fact;

    e. Advertising goods with intent not to sell them as advertised;

    f. Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

    g. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

    h. Representing that goods have been supplied in accordance with a previous representation when they have not been.

109. Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold mislabeled Products.

110. Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

111. Defendant is not a Massachusetts corporation and holds no property in that state. Nonetheless, Defendant received pre-suit notice of this cause of action.

112. Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

113. The Massachusetts Class has suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, *inter alia*, they lost money when they purchased the Products and/or paid an inflated purchase price for the Products.

114. Defendant knew, should have known, or was reckless in not knowing, that the Products were mislabeled.

115. Defendant had a duty to disclose mislabeling and misbranding because Defendant had knowledge of the true facts related to the Products prior to marketing and selling the Products.

116. As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the members of the Massachusetts Class have incurred damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

117. Plaintiff and the members of the Massachusetts Class have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

118. The Massachusetts Plaintiff seeks all available relief under Mass. Gen. Laws, Chapter 93A § 9.

## COUNT VII
### Breach of Implied Warranty

119. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

120. Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and respective state subclasses against Defendant.

121.     Each Plaintiff asserts this cause of action under Illinois law, or, in the alternative, the laws of the state where they are domiciled.

122.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they were specially formulated to contain "100% Whole Fish," when that is not true.

123.     Defendant breached its warranty implied in the contract for the sale of the products because they could not pass without objection in the trade under the contract description: the products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiffs and members of the Classes, and the products do not conform to the implied affirmations of fact made on the marketing and packaging for the Product.  U.C.C. §§ 2-313(2)(a), (e), (f).  As a result, Plaintiffs and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

124.     Plaintiffs and Members of the Classes purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

125.     The Product was defective when it left the exclusive control of Defendant.

126.     Plaintiffs and Members of the Classes did not receive the goods as warranted.

127.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Members of the Classes have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

128.     Plaintiffs seek all available relief under this cause of action.

## COUNT VIII
**Breach of Express Warranty**

129.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

130.     Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and their respective state subclasses against Defendant.

131.     Each Plaintiff asserts this cause of action under Illinois law, or, in the alternative, the laws of the state where they are domiciled.

132.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, expressly warranted that they were 100% whole fish.  The warranty was part of the description of the goods and the bargain upon which the goods were offered for sale.

133.     By falsely representing that the subject products were 100% whole fish, Defendant breached its express warranty.

134.     Plaintiffs and Members of the Classes did not receive the goods as warranted.

135.     As a direct and proximate cause of Defendant's breach of the express warranty, Plaintiffs and Members of the Classes have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

136.     Plaintiffs seek all available relief under this cause of action.

**COUNT IX**
**Unjust Enrichment**

137.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

138.     Each Plaintiff brings this cause of action individually and on behalf of the nationwide class and their respective state subclasses against Defendant.

139.     Each Plaintiff asserts this cause of action under the laws of Illinois, or, in the alternative, the state where they are domiciled.

140.     To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

141.     Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

142.     Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

143.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product was dangerous.  This caused injuries to Plaintiffs and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

144.     Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Product to Plaintiffs and the Class Members.

145.     Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

146.     Plaintiffs and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

147.     As a direct and proximate result of Defendant's actions, Plaintiffs and the Members of the Classes have suffered in an amount to be proven at trial.

148.     Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

149.     Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.   For an order certifying the Class and naming Plaintiffs as the representatives of the Class or Classes

b.   For an order declaring Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d. For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated: June 14, 2024

Respectfully submitted,

  /s/    Joel D. Smith

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (General Bar)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Yeremey O. Krivoshey
(pro hac vice forthcoming)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Carl Malmstrom
111 West Jackson, Suite 1700
Chicago, IL 60604
Phone: 312-984-0000
E-Mail: malmstrom@whafh.com

*Attorneys for Plaintiffs*

## CLRA Venue Declaration, Civil Code § 1780(c)

I, Joel D. Smith, declare as follows:

1.      I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2.      I am the attorney for Plaintiffs in the above-captioned action.

3.      I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

4.      The Class Action Complaint has been filed in the proper place for trial of this action.

5.      It is my understanding that Defendant regularly transacts business in this County, and the acts and omissions giving rise to this action occurred in large part in this County.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.  Executed on June 14, 2024 in Killingly, CT.

By:   /s/ Joel D. Smith
            Joel D. Smith