# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

CINDY PAPPERT, WILLIAM MARTIN, and )
CATHERINE FOSTER, individually and on )
behalf of all others similarly situated, )
                         )
           Plaintiffs, )
                         )   Case No. 1:24-cv-04835
v. )
                         )
CONAGRA BRANDS, INC., )
                         )
           Defendant. )
                         )

---

## CONAGRA BRANDS, INC.'S BRIEF IN SUPPORT OF ITS
## MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

---

Tobin J. Taylor (Bar #6238227)
HEYL ROYSTER VOELKER & ALLEN, P.C.
33 N. Dearborn Street
7th Floor
Chicago, IL 60602
(312) 853-8700
ttaylor@heylroyster.com

Angela M. Spivey (*pro hac vice*)
Andrew G. Phillips (*pro hac vice*)
Troy A. Stram (*pro hac vice*)
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)
angela.spivey@alston.com
andrew.phillips@alston.com
troy.stram@alston.com

***Attorneys for Conagra Brands, Inc.***

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

LEGAL STANDARD ................................................................................................ 5

ARGUMENT ............................................................................................................. 6

I.      Plaintiffs Lack Article III Standing ................................................................ 6

II.     Plaintiffs Do Not—and Cannot—Plausibly Claim that Reasonable Consumers are Deceived by the "100% Whole Fish Fillet" Claim. ......................................... 8

      A.     The Product Labels Truthfully and Accurately Convey that the Products Contain "100% Whole Fish Fillets." ...................................................... 8

      B.     Plaintiffs' Interpretation Is Unreasonable and Fanciful. ........................ 11

      C.     Consistent With the Seventh Circuit's Decision in *Bell v. Publix*, Context Confirms the Label Does Not Mislead Reasonable Consumers. .......................... 13

III.    Plaintiffs Do Not—and Cannot—Plausibly Allege that Including STPP in the Products Constitutes Unfair or Deceptive Conduct. ......................................... 15

IV.    Plaintiffs' Claims Fail for Additional Reasons. ........................................... 19

      A.     Plaintiffs Fail to Plead Their Claims with Particularity (Counts I–III & VI). ..................................................................................................... 19

      B.     Plaintiffs' Breach of Express and Implied Warranty Claims (Counts VII-VIII) Should be Dismissed for Numerous Reasons. ................................ 20

      C.     The Unjust Enrichment Claim (Count IX) Should Be Dismissed. ........ 22

      D.     Plaintiffs Lack Standing to Pursue Injunctive Relief. .......................... 23

      E.     Plaintiffs' Proposed Nationwide Class Should Be Dismissed. ............. 23

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amin v. Subway Rests., Inc.*,
No. 21-CV-00498-JST, 2022 WL 20184652 (N.D. Cal. July 8, 2022) ..................................15

*Anderson v. Unilever U.S., Inc.*,
607 F. Supp. 3d 441 (S.D.N.Y. 2022) (New York) ................................................................21

*Angiano v. Anheuser-Busch InBev Worldwide, Inc.*,
532 F. Supp. 3d 911 (C.D. Cal. 2021) ...................................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................5, 6, 16, 17

*Bakopoulos v. Mars Petcare US, Inc.*,
No. 20 CV 6841, 2021 WL 2915215 (N.D. Ill. July 12, 2021) ................................................6

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) ..................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................5, 6, 16

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020) ...................................................................................... passim

*Bober v. Glaxo Wellcome Plc*,
246 F.3d 934 (7th Cir. 2001) ................................................................................................10

*Brodsky v. Aldi Inc.*,
No. 20 C 7632, 2021 WL 4439304 (N.D. Ill. Sept. 28, 2021).................................................16

*Brown v. Auto-Owners Ins. Co.*,
No. 1:21-cv-02597, 2022 WL 2442548 (N.D. Ill. June 1, 2022)............................................24

*Brownell v. Starbucks Coffee Co.*,
681 F. Supp. 3d 27 (N.D.N.Y. 2023) .....................................................................................10

*Bush v. Well Pet, LLC*,
534 F. Supp. 3d 179 (D. Mass. 2021) ....................................................................................21

*Calderon v. Procter & Gamble Co.*,
674 F. Supp. 3d 483 (N.D. Ill. 2023) ......................................................................................7

*Camasta v. Jos. A Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ...............................................................................23

*Cerretti v. Whole Foods Mkt. Grp., Inc.*,
    2022 WL 1062793 (N.D. Ill. Apr. 8, 2022) ...........................................................11

*Chiappetta v. Kellogg Sales Co.*,
    No. 21-CV-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022)................................13

*Conrad v. Boiron, Inc.*,
    No. 13 C 7903, 2015 WL 7008136 (N.D. Ill. Nov. 12, 2015), *aff'd* 869 F.3d 536 (7th
    Cir. 2017) ..............................................................................................................23

*Cowen v. Lenny & Larry's, Inc.*,
    No. 17 CV 1530, 2017 WL 4572201 (N.D. Ill. Oct. 12, 2017) ............................24

*Cristia v. Trader Joe's Co.*,
    No. 22 CV 1788, 2022 WL 17551552 (N.D. Ill. Dec. 9, 2022) ..................14, 19, 23

*Davis v. G.N. Mortg. Corp.*,
    396 F.3d 869 (7th Cir. 2005) ................................................................................13

*Dawson v. Better Booch, LLC*,
    No. 23-CV-1091-DMS-DEB, 2024 WL 535882 (S.D. Cal. Feb. 9, 2024)............22

*DeMaso v. Walmart Inc.*,
    655 F. Supp. 3d 696 (N.D. Ill. 2023) (Illinois) .....................................................21

*Floyd v. Pepperidge Farm, Inc.*,
    581 F. Supp. 3d 1101 (S.D. Ill. 2022).....................................................................9

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ....................................................................................8

*Fullerton v. Corelle Brands, LLC*,
    2019 WL 4750039 (N.D. Ill. Sep. 30, 2019) ........................................................25

*Gagetta v. Walmart, Inc.*,
    646 F. Supp. 3d 1164 (N.D. Cal. 2022) ................................................................21

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................19

*Harris v. Pfizer, Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022).....................................................................11

*Harris v. Rust-Oleum Corp.*,
    No. 21-cv-01376, 2022 WL 952743 (N.D. Ill. Mar. 30, 2022) .......................24, 25

*Hillen v. Blistex, Inc.*,
　No. 17 C 2074, 2017 WL 2868997 (N.D. Ill. July 5, 2017) ................................................16

*Ibarrola v. Kind, LLC*,
　83 F. Supp. 3d 751 (N.D. Ill. 2015) ...........................................................................11, 12, 22

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
　Nos. 05 C 4742, 05 C 2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006) ..........................25

*Indiviglio v. B&G Foods, Inc.*,
　No. 22 CV 9545 (VB), 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023)........................19

*Johns v. Bayer Corp.*,
　No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ..............................7

*Johnston v. Kashi Sales, L.L.C.*,
　626 F. Supp. 3d 997 (S.D. Ill. 2022).........................................................................20, 21, 23

*Kerkorian v. Samsung Elecs. Am., Inc.*,
　No. 1:18-cv-00870-DAD-SKO, 2019 WL 6918293 (E.D. Cal. Dec. 18, 2019).....................19

*Lima v. Post Consumer Brands, LLC*,
　No. 1:18-CV-12100-ADB, 2019 WL 3802885 (D. Mass. Aug. 13, 2019) .............................21

*Liston v. King.com, Ltd.*,
　254 F. Supp. 3d 989 (N.D. Ill. 2017) (Tharpe, J.)..................................................................24

*Manley v. Hain Celestial Grp., Inc.*,
　417 F. Supp. 3d 1114 (N.D. Ill. 2019) .....................................................................................13

*Mantikas v. Kellogg Co.*,
　910 F.3d 633 (2d Cir. 2018).....................................................................................................13

*Moore v. Trader Joe's Co.*,
　4 F.4th 874 (9th Cir. 2021) ......................................................................................................12

*Myers-Taylor v. Ornua Foods N. Am., Inc.*,
　No. 3:18-CV-01538-H-MDD, 2019 WL 424703 (S.D. Cal. Feb. 4, 2019)............................22

*Oettle v. Walmart, Inc.*,
　No. 3:20-CV-455-DWD, 2022 WL 3584944 (S.D. Ill. Aug. 22, 2022) ...................................9

*Patenaude v. Orgain, LLC*,
　594 F. Supp. 3d 108 (D. Mass. 2022), *appeal dismissed*, No. 22-1255, 2022 WL
　4844337 (1st Cir. July 18, 2022) ......................................................................................14, 22

*Phillips v. DePaul Univ.*,
　385 Ill. Dec. 823 (1st Dist. 2014)............................................................................................13

*Podpeskar v. Dannon Co.*,
  No. 16-cv-8478 (KBF), 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017)..............................12, 19

*Rapp v. Green Tree Servicing, LLC*,
  302 F.R.D. 505 (D. Minn. 2014)...........................................................................................25

*Renn v. Otay Lakes Brewery, LLC*,
  No. 23CV1139-GPC(BLM), 2023 WL 6050582 (S.D. Cal. Sept. 14, 2023) ......................6, 7

*Richburg v. Conagra Brands, Inc.*,
  2023 WL 1818561 (N.D. Ill. Feb. 8, 2023) ...........................................................................11

*Rick v. Profit Mgmt. Assocs., Inc.*,
  241 F. Supp. 3d 215 (D. Mass. 2017) ...................................................................................19

*Robie v. Trader Joe's Co.*,
  2021 WL 2548960 (N.D. Cal. June 14, 2021) ....................................................................8, 22

*Sarr v. BEF Foods, Inc.*,
  No. 18-cv-6409 (ARR) (RLM), 2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ......................10

*Schneider v. Mott's LLP*,
  No. 3:21-CV-1251-NJR, 2022 WL 4314207 (S.D. Ill. Sept. 19, 2022) .................................15

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ...................................................................................................6

*Sklyar v. Energizer Brands, LLC*,
  No. 20-CV-6216(EK)(MMH), 2022 WL 4539573 (E.D.N.Y. Sept. 28, 2022).....................12

*Slowinski v. BlueTriton Brands, Inc.*,
  No. 24-cv-513, 2024 WL 3757097 (N.D. Ill. Aug. 9, 2024) ............................................8, 12

*Smith-Brown v. Ulta Beauty, Inc.*,
  2019 WL 932022 (N.D. Ill. Feb. 26, 2019) ...........................................................................24

*Sneed v. Ferrero U.S.A., Inc.*,
  656 F. Supp. 3d 777 (N.D. Ill. 2023) ......................................................................................8

*Sorkin v. The Kroger Co.*,
  No. 23 C 14916, 2024 WL 3673719 (N.D. Ill. Aug. 6, 2024)..........................................12, 14

*Souter v. Edgewell Pers. Care Co.*,
  No. 20-CV-1486 TWR (BLM), 2022 WL 485000 (S.D. Cal. Feb. 16, 2022).......................22

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..................................................................................................................6

*Swartz v. Coca-Cola Co.*,
  No. 21-cv-04643-JD, 2023 WL 4828680 (N.D. Cal. July 27, 2023)....................................20

*Swiatek v. CVS Pharmacy, Inc.*,
  No. 23-CV-01523, 2024 WL 1328801 (N.D. Ill. Mar. 28, 2024)...........................................20

*Tarzian v. Kraft Heinz Foods Co.*,
  18 C 7148, 2019 WL 5064732 (N.D. Ill. Oct. 10, 2019)...........................................17, 18, 19

*Thompson v. Bayer Corp.*,
  2009 WL 362982 (E.D. Ark. Feb. 12, 2009) .........................................................................25

*Tomasella v. Nestle USA, Inc.*,
  962 F.3d 60 (1st Cir. 2020)......................................................................................................8

*Toulon v. Cont'l Cas. Co.*,
  877 F.3d 725 (7th Cir. 2017) ...................................................................................................5

*True v. Conagra Foods, Inc.*,
  2011 WL 176037 (W.D. Mo. Jan. 4, 2011) ...........................................................................25

*Vitort v. Kroger Co.*,
  No. 3:20-cv-01317, 2021 WL 6061864, at *6 (D. Or. Sept. 13, 2021), *R. & R.
  adopted*, No. 3:20-cv-01317, 2022 WL 294904 (D. Or. Feb. 1, 2022), *aff'd*, No. 22-
  35185, 2023 WL 3143690 (9th Cir. Apr. 28, 2023) ...............................................................19

*Warren v. Whole Foods Mkt. Grp., Inc.*,
  574 F. Supp. 3d 102 (E.D.N.Y. 2021) ........................................................................... passim

*Watkins v. MGA Ent., Inc.*,
  574 F. Supp. 3d 747 (N.D. Cal. 2021) ...................................................................................20

*Weaver v. Champion Petfoods USA Inc.*,
  No. 20-2235, 2021 WL 2678801 (7th Cir. 2021)......................................................................6

*Wertymer v. Walmart, Inc.*,
  No. 23 CV 14700, 2024 WL 2126732 (N.D. Ill. Feb. 22, 2024)............................................20

*Willard v. Tropicana Mfg. Co., Inc.*,
  577 F. Supp. 3d 814 (N.D. Ill. 2021) .......................................................................................7

*Wurtzburger v. Kentucky Fried Chicken*,
  No. 16-CV-08186 (NSR), 2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017).............................16

*Yu v. Dreyer's Grand Ice Cream, Inc.*,
  592 F. Supp. 3d 146 (S.D.N.Y. 2022)....................................................................................22

*Zaback v. Kellogg Sales Co.*,
    No. 320CV00268BENMSB, 2020 WL 3414656 (S.D. Cal. June 22, 2020)..........................17

**RULES**

Rule 9(b) ..................................................................................................................19, 20

Rule 12(b)(1)..................................................................................................................6

Rule 12(b)(6)..................................................................................................................5

Rule 23(b)(3)................................................................................................................24

**STATUTES**

Mass. Gen. Laws ch. 93A ...........................................................................8, 20, 22, 23

**INTRODUCTION**

Plaintiffs' complaint unleashes a sea-full of rhetoric about "seafood fraud," "misidentification and substitution of fish species," "short weighting" and "eutrophication of fresh water sources." ECF No. 6 (First Amended Class Action Complaint ("FAC")) ¶¶ 1–3, 18–21. But Plaintiffs fail to assert a single plausible claim for relief. Indeed, their entire complaint is dead in the water because (1) Plaintiffs lack standing due to their failure to plausibly allege they purchased ***any*** specific products and (2) Plaintiffs have not plausibly alleged that the challenged truthful and non-misleading labeling would deceive a reasonable consumer.

Plaintiffs assert the Products[1] are misleadingly labeled as including "100% Whole Fish Fillets," and that this claim somehow led Plaintiffs to believe the Products do not contain any other ingredients. *Id.* ¶¶ 29–31. But that claim fails for numerous reasons, foremost of which is that a reasonable consumer would never understand the challenged claim, presented on a frozen, ***breaded***, and ***seasoned*** fish product, to mean that the product is comprised exclusively of 100% fish, as Plaintiffs implausibly claim. Plaintiffs do not—and cannot—dispute that the base of the breaded, seasoned fish Products is "100% Whole Fish Fillets."

Plaintiffs also purport to assert claims for alleged "short weighting" of the Products, but those claims fail because Plaintiffs do not allege that Conagra—as opposed to commercial fish processors, generally—engaged in "short-weighting" (described as "misrepresent[ing] the weight of a seafood product"). *Id.* ¶ 21. Nor do Plaintiffs even assert ***a single allegation*** about the advertised weight of the challenged Products or the weight of the Products Plaintiffs received.

Accordingly, the Court should reject Plaintiffs' fish tale and dismiss the FAC in its entirety and with prejudice.

---

[1] The full list of challenged products is contained in paragraph 27 of the FAC.

## FACTUAL BACKGROUND

Plaintiffs allege that ten varieties of frozen, breaded fish products sold under Conagra's Mrs. Paul's and Van de Kamp's brands falsely and misleadingly claim "that the products are '100% Whole Fish Fillets.'" FAC ¶¶ 27, 29. They claim this statement led them to believe "that the products are literally composed of [exclusively] 100% Whole Fish" (*id.* ¶ 30), despite the fact the Products nowhere claim to be comprised of "100% Whole Fish" as opposed to containing "100% Whole Fish <u>Fillets</u>." *See id.* ¶ 29 (emphasis added). Plaintiffs also allege that "other statements" on the Products' labeling, including statements such as "Wild Caught" reinforce "the portrayal of the product containing 100% whole fish, as it is found in the 'wild'" and that statements on the back of the products' label further "reinforce the false representation on the front that the products contain '100% whole fish.'" *Id.* ¶¶ 31–33. Plaintiffs claim that "[b]ecause the '100% Whole Fish' statement appears effectively as the main, stand-alone claim on the front of the labels of the products, reasonable consumers interpret it at face value: that the products are literally composed of [exclusively] 100% Whole Fish." *Id.* ¶ 30. Somehow, Plaintiffs ignore that the alleged "main, stand-alone claim" is "100% Whole Fish <u>Fillets</u>" and that the claim is secondary to the much more prominent labeling statement that the Products are, *e.g.*, "CRUNCHY BREADED FILLETS" or "BEER BATTERED FILLETS," which appears alongside prominent images depicting fish products covered in breading *Id.* ¶ 29–30.

 

*Id.* ¶ 29.

The Product names, along with the prominent imagery of **breaded** fish fillets, clearly convey that the Products are comprised of **other** ingredients besides "100% Whole Fish Fillets." Plaintiffs also acknowledge that each of the Products' "ingredients list states that the products contain [along with other ingredients] 'sodium tripolyphosphate (added to retain moisture).'" *Id.* ¶ 35.



Despite the prominent imagery and labeling statements making clear to Plaintiffs that the Products contain ingredients other than "100% Whole Fish Fillets," Plaintiffs claim that the disclosure "about the presence of STPP does not dispel or disclaim to reasonable consumers the bold, prominent statements on the front and back of the Products suggesting that the Products are composed of '100% Whole Fish.'" *Id.* ¶ 35.

Throughout their deficiently-pled complaint, Plaintiffs suggest that this case is about Conagra's "widespread use of short weighting on a massive scale" by means of "pump[ing] up" the fish with STPP and extra water. *Id.* ¶¶ 2–3. But **nowhere** do Plaintiffs plead that Conagra—as opposed to fish "processors," generally—"misrepresent[s] the weight of a seafood product." *See id.* ¶ 21. Instead, with no supporting factual allegations, Plaintiffs claim in conclusory fashion that "the STPP in the products is not added to retain the natural water or moisture of the

fish" (despite the ingredient label expressly declaring exactly that purpose), "but rather to bulk up the products' weight and size and retain the water that has been artificially pumped into the products at Defendant's processing plants." *See id.* ¶¶ 34–35. Critically, Plaintiffs make no supporting factual allegations about when that water is allegedly added, what "processing plants" Conagra allegedly uses, or what process Conagra purportedly employs to "pump" up the fish with the alleged "industrial filler." *See id.* ¶¶ 3, 33, 35. Instead, the majority of Plaintiffs' "short-weighting" allegations involve alleged practices of fish processors, generally—*i.e.*, "the widespread use of short weighting on a massive scale"—as opposed to factual allegations about Conagra's purported practices with respect to the Products at issue. *Id.* ¶¶ 1–3, 21–23. The FAC goes so far in relying on the practices of other "processors" that it points to a picture ***not*** of the subject Products showing a "white substance oozing from STPP-infused seafood." Plaintiffs claim that the white substance was added to this non-Conagra product "by way of an STPP soak," and then make the disjointed conclusion that "the subject [Conagra] products are not '100% Whole Fish Fillets,' but instead are fish *and* water *and* STPP." *Id.* ¶ 36.

Based on these claims, Plaintiffs assert causes of action under California, New York, and Massachusetts consumer protection laws, as well as claims for breaches of express and implied warranty and for unjust enrichment. FAC ¶¶ 47–149. Each Plaintiff claims that he or she "reviewed and relied on the product packaging before buying the product at issue, including the representation that the products were 100% whole fish." *Id.* ¶ 8. But no plaintifff alleges ***which*** Products they actually reviewed, relied on, or purchased. Instead, they each allege that they "purchased the subject Van de Kamp [or Mrs. Paul's] brand products" in 2022 or 2023. *Id.* ¶¶ 5–7. Notably, two of the ten "subject" Products—Van de Kamp's and Mrs. Paul's brand Fish Sticks (the "Fish Sticks Products")—do not contain the allegedly false and misleading claim that they

are comprised of "100% Whole Fish Fillets." Instead, as shown below, those products inform consumers that they are "made from minced fish." So to the extent Plaintffs purchased the Fish Stick Products, their lawsuit fails because those products do not include the challenged claims. Additionally, the inclusion of "made from minced fish" on the Fish Sticks Products further contextualizes the subject claim as truthfully informing consumer that the Products are made with "100% Whole Fish Fillets," as opposed to "minced fish" or a blend, combination, or assortment of fish products. *See* Request for Judicial Notice ("RJN") Exs. C, D. The Fish Sticks Products also do not contain STPP, as shown in the ingredients list below. *Id.*[2]

 

### LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, if accepted as true, to 'state a claim to relief that is plausible on its face.'" *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A complaint's **factual** allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff,

---

[2] As discussed below, Plaintiffs' insufficient purchase allegations are fatal to Plaintiffs' lawsuit in its entirety because they require the Court to speculate as to whether Plaintiffs actually purchased Products containing the challenged "100% Whole Fish Fillet" claim, knowing that several of the challenged Products demonstrably did not bear that statement at all. *Id.*

however, cannot carry this burden with "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Twombly,* 550 U.S. at 555 (stating that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do").

In response to a Rule 12(b)(1) motion to dismiss for lack of standing, Plaintiffs bear the burden of establishing each element of Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To analyze a standing challenge on a Rule 12(b)(1) motion, the Court applies the same standard from *Twombly* and *Iqbal* and their progeny, which require that any "claim to relief [be] plausible on its face." *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015).

## ARGUMENT

Plaintiffs' complaint must be dismissed in its entirety because Plaintiffs lack standing to challenge Products they did not purchase, and because Plaintiffs fail to plausibly allege that any statements on the Products' packaging would mislead a reasonable consumer or that Conagra engaged in the practice of "short weighting" in the first instance. Plaintiffs' individual and class claims also fail for a host of additional, independent reasons.

## I.    Plaintiffs Lack Article III Standing.

"Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products." *Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021); *see Weaver v. Champion Petfoods USA Inc.*, No. 20-2235, 2021 WL 2678801, at *5 (7th Cir. 2021) (no standing for alleged injury relating to products a plaintiff did not buy). Plaintiffs fail to satisfy the injury-in-fact requirement because they do not allege which of the subject Products they purchased. *Renn v. Otay Lakes Brewery, LLC*, No. 23CV1139-GPC(BLM), 2023 WL 6050582, at *2 (S.D. Cal. Sept. 14, 2023) (no standing where a plaintiff did "not allege which Products he purchased" as opposed to

"generally aver[ring] that he purchased 'an assortment of flavors'"). Plaintiffs only cursorily allege that they each "purchased the subject Van de Kamp [and/or] Mrs. Paul's brand products several times over the last few years." FAC ¶¶ 5–7. But that is not sufficient to establish Article III standing, because Plaintiffs must specifically allege *which* Products they purchased, and when. *See Calderon v. Procter & Gamble Co.*, 674 F. Supp. 3d 483, 489 (N.D. Ill. 2023) (plaintiffs only have standing to sue based "on the product she purchased"); *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 825 (N.D. Ill. 2021) ("Plaintiffs lack standing to assert claims over any Products that they *did not* actually purchase."). Numerous courts have found that similarly generalized allegations like those presented here fail to establish Article III standing. *See, e.g.*, *Renn*, 2023 WL 6050582, at *2 (dismissing complaint for lack of subject matter jurisdiction and explaining that "[b]y failing to allege which Products injured [Plaintiffs], Plaintiff[s] ha[ve] not sufficiently alleged standing to pursue all claims against Defendant").

Further undermining their claims, Plaintiffs include two products in their list of "products at issue" that do not contain the challenged claim or ingredients. *See* FAC ¶ 27. As shown above, the Fish Sticks Products do not include the "100% Whole Fish Fillets" claim. Instead, they accurately convey to consumers that they are "made from minced fish." *See* RJN Exs. C, D. To the extent Plaintiffs bought Fish Sticks (which they don't clearly allege), Plaintiffs fail to allege how they were deceived by a labeling claim not placed on these products. At a minimum, the FAC must be dismissed with respect to the Fish Sticks Products, which do not contain the challenged claim. *See Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (no standing for "advertisements relating to a product that he did not rely upon"). But to be sure, Plaintiffs' FAC should be dismissed in its entirety because it requires both Conagra and the Court to speculate as to which Products each Plaintiff actually purchased.

II.      **Plaintiffs Do Not—and Cannot—Plausibly Claim that Reasonable Consumers are Deceived by the "100% Whole Fish Fillet" Claim.**

Plaintiffs fail to plausibly allege that a reasonable consumer would be deceived by the "100% Whole Fish Fillets" claim for a host of reasons. *First*, the Products' labels truthfully and accurately convey that the Products contain "100% Whole Fish Fillets" and contain no deceptive statements to the contrary. *Second*, by illogically truncating the challenged claim, Plaintiffs' subjective understanding of the Product labeling is unreasonable and fanciful and would not be shared by a reasonable consumer. *Third*, context confirms that the Products' labels are ***not*** ambiguous and do not mislead reasonable consumers.

A.      **The Product Labels Truthfully and Accurately Convey that the Products Contain "100% Whole Fish Fillets."**

Plaintiffs' consumer protection claims are all governed by the "reasonable consumer" standard,[3] which requires Plaintiffs to identify a particular statement that is "likely to deceive reasonable consumers." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020); *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 475 (7th Cir. 2020). Plaintiffs fail to meet that burden because they cannot demonstrate "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the challenged statement to believe "that the products are literally composed of [exclusively] 100% Whole Fish." FAC ¶ 30; *Bell*, 982 F.3d at 475; *see also Slowinski v. BlueTriton Brands, Inc.*, No. 24-cv-513, 2024 WL 3757097, at *13 (N.D. Ill. Aug. 9, 2024) (finding plaintiffs interpretation of "100% Natural" statement on bottled water to mean the

---

[3] *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (CLRA, FAL, UCL, and GBL utilize a "reasonable consumer" standard); *Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *7 (N.D. Cal. June 14, 2021), *Sneed v. Ferrero U.S.A., Inc.*, 656 F. Supp. 3d 777, 787–88 (N.D. Ill. 2023) (unjust enrichment); *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) (Chapter 93A).

"water would not contain any synthetic material" unreasonable). Instead, the front label claim truthfully and accurately informs consumers that the *breaded* fish fillet products contain "100% Whole Fish Fillets" (except the Fish Sticks Products, which make clear they are "made from minced fish").

There is also no promise on any of the Products' labels that the Products do not contain other ingredients, nor do the Products claim to be comprised "entirely" or "exclusively" of whole fish fillets. Rather, each of the fish fillet products prominently declares otherwise in the center of the packaging via large, bold, capitalized letters presenting the individual product name: "BEER BATTERED FILLETS," "CRISPY BATTERED FILLETS," or "CRUNCHY BREADED FILLETS." *See* FAC ¶ 29, RJN Exs. A, B. Next to the oversized product names are prominent images—comprising nearly one half of the front label—that show the fish fillet products covered in batter or breading. *Id.* Accordingly, no reasonable consumer would read the front label claim "100% Whole Fish Fillets" to mean that the Products "are literally composed of 100% whole fish" as Plaintiffs' assert in their complaint. *See* FAC ¶ 30. Instead, the "100% Whole Fish Fillets" claim informs consumers that the Products start with a whole fish fillet—as opposed to minced fish, or a combination of fish species—and nothing in the label would lead a reasonable consumer to conclude the Products are made *exclusively* from fish. *Oettle v. Walmart, Inc.*, No. 3:20-CV-455-DWD, 2022 WL 3584944, at *5 (S.D. Ill. Aug. 22, 2022) (dismissing consumer fraud claim where "[t]he product's label [wa]s accurate, and nothing in the label (or missing from the label) would lead a reasonable consumer to conclude that the qualifier 'with global components' indicates that 100% of the product's parts originated in the United States"); *see also Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) ("a statement or label cannot mislead unless it actually conveys untrue information about a product") (citing

9

*Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 938 (7th Cir. 2001)).

A reasonable consumer would not view the frozen breaded fish Products and interpret the phrase "100% Whole Fish Fillets" to mean that the Product was comprised ***entirely*** of fish and no other ingredients or additives, as Plaintiffs implausibly do. *See Brownell v. Starbucks Coffee Co.*, 681 F. Supp. 3d 27, 38 (N.D.N.Y. 2023) (dismissing GBL§§ 349 and 350 claims based on challenge to "100% Arabica Coffee" labeling claim). In *Brownell*, the plaintiff claimed the "100% Arabica Coffee" label misleadingly conveyed to consumers that the product "contained ground coffee beans without any vitamins or minerals," but the court explained that "the word 'arabica' simply refers to the plant from which the coffee bean was harvested" and found that a reasonable consumer would understand the "100% Arabica Coffee" labeling to mean that the ground coffee beans are exclusively from the arabica plant, and the Product does not contain coffee beans from any other type of coffee been producing plant." *Id.*; *see also Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 116 (E.D.N.Y. 2021) (dismissing challenge to "100% Whole Grain" labeling claim on oatmeal product because surrounding text describing the whole grain as comprising a portion of each serving of oatmeal, rather than the entire product, made the plaintiff's understanding implausible).

Here, each of the challenged Products are breaded fish products, and therefore, like in *Brownell* and *Warren*, it is implausible that a reasonable consumer would view the Products' label and interpret the challenged claim to mean there are no other ingredients in the Products. *See also Sarr v. BEF Foods, Inc.*, No. 18-cv-6409 (ARR) (RLM), 2020 WL 729883, at *5 (E.D.N.Y. Feb. 13, 2020) (rejecting claim that a boxed mashed potato product's representation that it was "Made with 100% Fresh Potatoes" would imply that the product lacked preservatives because the label's "representations unambiguously mean that the potatoes used as an ingredient

10

in the Mashed Potatoes were fresh when so incorporated").

**B.      Plaintiffs' Interpretation Is Unreasonable and Fanciful.**

Plaintiffs persist that reasonable consumers will reach past the obvious disclosures on the Products' packaging and illogically assume that the Products "are 100% whole fish." FAC ¶ 33. Courts are clear, however, that "[a] plaintiff does not have a claim . . . just because she comes away from an advertisement with an incorrect impression." *Harris v. Pfizer, Inc.,* 586 F. Supp. 3d 231, 243–44 (S.D.N.Y. 2022); *accord Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *3–4 (N.D. Ill. Apr. 8, 2022). Indeed, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477; *Richburg v. Conagra Brands, Inc.*, 2023 WL 1818561, at *7 (N.D. Ill. Feb. 8, 2023). And consumers who interpret labeling "statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight." *Warren*, 574 F. Supp. 3d at 117 (citation omitted); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015) (no reasonable consumer could read "no refined sugars" alongside "contrary information in the ingredient list" and think the product was completely free of refined sugars because sugar cane must necessarily be refined to be used and "[t]he Court must view the allegedly misleading statement in light of the information available to [plaintiff] at the time of her purchase"). Here, no reasonable consumer would interpret the Products' labeling in the same unreasonable and fanciful way as Plaintiffs.

Plaintiffs misleadingly truncate the labeling claim in their complaint to fit their misconceived narrative by repeatedly alleging that the Products are advertised as "100% Whole Fish," when, in reality, the labels convey that the Products contain "100% Whole Fish ***Fillets***." *See, e.g.*, FAC ¶ 3 ("Defendant claims that its popular … frozen fish products are "100% Whole Fish."), ¶ 8 ("Each Plaintiff reviewed and relied on the … representation that the products were

11

100% whole fish.").[4] Plaintiffs' incomplete reading of the labeling claim is not how reasonable consumers would understand it. *See Slowinski*, No. 1:24-cv-00513 (Dkt. 23) at 17 (dismissing ICFA claim as implausible because reasonable consumers "aren't going to be stumped by the phrase '100% Natural Spring Water'"). Notably, "courts have dismissed deceptive labeling claims at the pleadings stage where . . . plaintiffs' alleged inference appeared fundamentally incompatible with basic common sense." *Sklyar v. Energizer Brands, LLC*, No. 20-CV-6216(EK)(MMH), 2022 WL 4539573, at *3 (E.D.N.Y. Sept. 28, 2022); *Sorkin v. The Kroger Co.*, No. 23 C 14916, 2024 WL 3673719, at *3 (N.D. Ill. Aug. 6, 2024) ("[I]t is not enough to allege that the product misled a particular plaintiff. Idiosyncratic readings and unreasonable interpretations of a label don't cut it.").[5] Here, Plaintiffs' claims belie common sense because reasonable consumers would not understand a battered or breaded fish product to be comprised exclusively of fish. *See Sorkin*, 2024 WL 3673719, at *5 (dismissing claim where consumer failed to plausibly show his "definition of 'farm fresh' aligns with the expectations of a reasonable consumer"); *Slowinski*, 2024 Wl 3757097, at *13 (dismissing ICFA claim because "[n]o reasonable consumer would read the phrase '100% Natural Spring Water' and think [the defendant] was making a guarantee" that the product did not contain microplastics); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021) (consumer's understanding of 100% claim was "unreasonable or fanciful" due to multiple "contextual inferences from the product itself").

At worst, the labeling claim is "insufficiently specific" because it did not include the words "made with" or "includes," but courts in this district have previously observed that

---

[4] *See also* FAC ¶¶ 30, 31, 33, 35, 122, 132, 133.

[5] *See also Ibarrola*, 83 F. Supp. 3d at 756; *Podpeskar v. Dannon Co.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *4-5 (S.D.N.Y. Dec. 3, 2017) (dismissing as implausible challenge that "natural" labeling on yogurt was false because the cows who provided the milk for the yogurt ate food with GMOs or were fed antibiotics).

"insufficiently specific" claims are "not actionable" under consumer protection laws. *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1119 (N.D. Ill. 2019) (*citing Phillips v. DePaul Univ.*, 385 Ill. Dec. 823, 834 (1st Dist. 2014) (finding while information "could certainly have been more specific," it was not actionable under the ICFA as it made "no affirmative misrepresentation")); *see also Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022), (finding "no reasonable consumer could conclude," based merely on the use of the term "Strawberry" and the picture on the package, that a Strawberry Pop-Tart contained only strawberries, not other fruits, and food dye).

Plaintiffs also offer no proof—such as a consumer survey or other evidence—that their fanciful interpretation is consistent with how reasonable consumers interpret the Products' labeling claim. *See Bell*, 982 F.3d at 480 (acknowledging consumer surveys showing 85–95% of consumers shared the plaintiffs' interpretation as support for allegations of deception).

### C. Consistent With the Seventh Circuit's Decision in *Bell v. Publix*, Context Confirms the Label Does Not Mislead Reasonable Consumers.

In the Seventh Circuit, courts must view the allegedly misleading statement "in light of the totality of the information made available to the plaintiff" because that additional context can dispel any implausible assumption that reasonable consumers are deceived. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005); *Bell*, 982 F.3d at 477 (upholding the "general principle" that context must be considered in deceptive advertising cases by looking at "all the information available to consumers and the context in which that information is provided and used"). The standard is the same for each of Plaintiffs' consumer protection claims. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) ("context is crucial" in determining "whether a reasonable consumer would have been misled by a particular advertisement"); *Warren*, 574 F. Supp. 3d at 113 (GBL §§349-350 claims depend "on a context-specific inquiry into whether a

*reasonable* consumer, viewing the representation in *context*, would *likely* be misled"); *Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 113 (D. Mass. 2022), *appeal dismissed*, No. 22-1255, 2022 WL 4844337 (1st Cir. July 18, 2022) (Ch. 93A claims depend on the "circumstances" of the alleged deception).

Here, the "totality of the information made available to the plaintiff[s]"—including the challenged claim, the name of the Products at issue (*e.g.*, "Beer Battered," "Crunchy Breaded"), the large images of breaded fish fillets, and the ingredients list—provide important context and convey to reasonable consumers that the fish fillet Products are comprised of whole fish fillets plus other ingredients, including breading, flavoring, spices, and STPP—"added to retain moisture." *See* RJN Exs. A, B. This necessary context confirms that Plaintiffs' claims should be dismissed because a reasonable consumer would not come to the same illogical conclusion as Plaintiffs. *See Sorkin*, 2024 WL 3673719, at *4 (dismissing complaint where plaintiff "attempt[ed] to impute meaning that is not fairly derived from the labeling itself") (internal quotation omitted); *Cristia v. Trader Joe's Co.*, No. 22 CV 1788, 2022 WL 17551552, at *5 (N.D. Ill. Dec. 9, 2022) (dismissing complaint where plaintiff failed to plausibly allege that reasonable consumer would "agree with her subjective interpretation of the label").

Dismissal on the pleadings would be consistent with the Seventh Circuit's decision in *Bell v. Publix Super Mkts.*, because when considered with the necessary context, the Products' labeling is not ambiguous. In *Bell* the Seventh Circuit found that a label for "100% Grated Parmesan Cheese" was ambiguous because it was not clear from the front label whether the product contained only cheese. *Bell*, 982 F.3d at 480. But here, the "100% Whole Fish Fillets" advertising statement is not ambiguous when properly considered along with "all the information available to consumers and the context in which that information is provided and used." *Id.* at

14

477. The Products advertise to consumers that they are comprised of "100% **Whole** Fish **Fillets**." (emphasis added). The terms "whole" and "fillets" are not superfluous. They—along with the prominent product name and oversized image of a breaded fish product—provide all the context needed to understand that the Products contain whole fish fillets as opposed to minced fish or a combination of fish species. And viewing the ingredient list *confirms* rather than *contradicts* that labeling claim, as the first ingredient is haddock or pollock, depending on the product. The ingredient list then (as is often the case) provides additional information to the consumers, *i.e.*, that the Products also include other ingredients, including STPP.

Because a *battered* and *breaded* fish product *cannot* be comprised exclusively of fish, it is evident from the available context that the Products contained additional ingredients *other than* fish, unlike the grated cheese at issue in *Bell*, which the Seventh Circuit found could have been construed as being comprised entirely of grated parmesan cheese. *Id.* at 480–81; *see also Amin v. Subway Rests., Inc.*, No. 21-CV-00498-JST, 2022 WL 20184652, at *4 (N.D. Cal. July 8, 2022) (dismissing challenge to subway tuna salad sandwich on theory there would be no ingredients aside from tuna in the sandwich because reasonable consumers "understand that tuna salad is usually mixed with mayonnaise and that a tuna sandwich will contain bread"); *Schneider v. Mott's LLP*, No. 3:21-CV-1251-NJR, 2022 WL 4314207, at *5 (S.D. Ill. Sept. 19, 2022) (finding a "Made From 100% Real Fruit" claim on applesauce plausibly misleading because applesauce is a product capable of being made entirely from real fruit).

## III. Plaintiffs Do Not—and Cannot—Plausibly Allege that Including STPP in the Products Constitutes Unfair or Deceptive Conduct.

Plaintiffs' complaint boldly claims that this case "involves the widespread use of short weighting on a massive scale," (FAC ¶ 2), but despite containing 149 paragraphs, Plaintiffs' FAC fails to assert "sufficient factual matter … to 'state a claim to relief that is plausible on its

face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**First**, Plaintiffs' conclusory allegations and speculation about "short weighting" cannot state a plausible claim for relief because Plaintiffs fail to include **any** allegations about the weight of any Product. *See Brodsky v. Aldi Inc.*, No. 20 C 7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) (dismissing fraud claim where plaintiffs made no allegation the products did not weigh as advertised). At best, Plaintiffs claim that Conagra "artificially add[s] weight" to the Products, but Plaintiffs never allege that they received any less fish than what they bargained for or that they paid a price premium based on the amount of fish they believed they were purchasing. Plaintiffs do not even allege the labeled net weight of the Products, or allege (much less quantify) how the net weight displayed on the principal display panel was inaccurate or misleading. Likewise, Plaintiffs make no allegations that they saw or relied on the weight of the Products when making their purchases. Indeed, the Products' labeling discloses that each box contains "10 Fillets" and Plaintiffs make no allegations that their purchases did not include 10 fillets or otherwise contained any less (by item count or weight) product than labeled. The short weighting allegations should be dismissed for this reason alone. *See Hillen v. Blistex, Inc.*, No. 17 C 2074, 2017 WL 2868997, at *3 (N.D. Ill. July 5, 2017) (dismissing fraud claims because the plaintiff failed to plausibly allege the package "contained less of the product than the net weight stated on the label"); *Wurtzburger v. Kentucky Fried Chicken*, No. 16-CV-08186 (NSR), 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (dismissing GBL §§ 349 & 350 claims where consumer "received the precise number of items requested").

**Second**, Plaintiffs' short weighting claim fails because there are no facts supporting that Conagra, as opposed to fish "processors" generally, "artificially add[s] weight" to the Products. *See* FAC ¶ 1–3. Where a plaintiff relies on speculation and "provides no factual basis for [her]

argument," courts regularly dismiss claims for failure to allege sufficient facts to "nudge [a plaintiff's] claims … across the line from conceivable to plausible." *See, e.g., Zaback v. Kellogg Sales Co.*, No. 320CV00268BENMSB, 2020 WL 3414656, at *3 (S.D. Cal. June 22, 2020) (quoting *Iqbal*, 556 U.S. at 680). Plaintiffs never provide a link from their outlandish allegations of generalized "seafood fraud" to the fish fillets used in Conagra's Products—much less actual Products purchased by Plaintiffs. Instead, without any supporting factual allegations, Plaintiffs rely solely on the conclusory claim that "Defendant pumps up those fish with an industrial filler called sodium tripolyphosphate ('STPP') and extra water to artificially add weight." FAC ¶ 3.

Plaintiffs also make generalized allegations about "STPP soaking," but do not include a single allegation describing how Conagra, as opposed to fish "processors" generally, engages in such a practice when producing the Products at issue. Instead, Plaintiffs focus on generalized assertions, including about a "white substance oozing from STPP-infused seafood shown in Paragraph 26." *Id.* ¶ 36. But the fish featured in the picture in paragraph 26 is *not* any of the Products at issue, which are all ***breaded*** products. (The picture clearly depicts a non-breaded fish fillet.) *See id.* ¶¶ 26, 36. Still, Plaintiffs claim the "white substance oozing" in the picture "was added to the fish by way of an STPP soak" and thus "the subject products are not '100% Whole Fish Fillets,' but instead are fish *and* water *and* STPP. STPP and water are therefore added to the fish; they are not part of the fish itself." FAC ¶ 36. But just like that unsourced picture of a non-Conagra product, none of Plaintiffs' conclusory allegations support a plausible claim that Conagra—as opposed to fish "processors" generally—adds STPP to its fish for purposes of short weighting. *See Tarzian v. Kraft Heinz Foods Co.*, 18 C 7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 10, 2019) (dismissing similarly generic claims that failed to make specific allegations about the challenged ingredient within the products at issue). In *Tarzian*, the court rejected allegations

that the defendant's products contained "industrially manufactured citric acid" because they did "not link the allegedly artificial citric acid to the citric acid used" by the defendant. 2019 WL 5064732, at *4. The *Tarzian* court observed that allegations about "the practices commonly used" by manufacturers do not provide a viable link to the defendant's products or support the claim that it is artificial. *Id.* Plaintiffs' allegations are analogous to those dismissed in *Tarzian*, because the FAC discusses fish "processors" generally as opposed to the alleged acts of Conagra. *See, e.g.*, FAC ¶ 21 (describing how "*processors* misrepresent the weight of a seafood product through practices such as overglazing or soaking"), ¶ 22 (describing how "*a processor* uses excess ice (overglazing) or additives (soaking)" to impact the "net weight of the seafood").[6]

**Third**, even if Plaintiffs had plausibly alleged that Conagra's use of STPP increased the weight of the Products (they haven't), their claim would still fail because, as discussed in § II (*supra*), a reasonable consumer would not interpret the challenged "100% Whole Fish Fillet" claim on clearly battered/breaded/seasoned products as a representation that the Products did not contain other ingredients. Indeed, ***STPP is explicitly disclosed in the ingredients list as a substance "added to retain moisture," which concomitantly would retain weight***. FAC ¶ 34.

At bottom, Plaintiffs fail to meet their pleading burden because they do not include any factual allegations that water is ***added*** to the fish fillets to pump up their weight (as opposed to, for example, being included as an ingredient in the Products' breading). Nowhere do Plaintiffs plausibly allege that the Products at issue here, as opposed to some seafood products in general, contain added STPP and water for the purpose of short weighting, or increasing the size of the Products. Finally, Plaintiffs have not alleged that they saw or relied on the advertised weight of the Products when making their purchasing decisions. Thus, as other courts have observed,

---

[6] Plaintiffs' claim that "STPP and added water … are not healthy, [and] are not good for the environment" is also factually unsupported. *See* FAC ¶ 33.

Plaintiffs cannot project their subjective feelings as though they align with reasonable consumers', and their conclusory allegations about Conagra's Products and practices "cannot meet *Twombly*'s insistence that claims be nudged over the line from conceivable to plausible." *Podpeskar*, 2017 WL 6001845, at *4–5.[7]

## IV. Plaintiffs' Claims Fail for Additional Reasons.

Plaintiffs' other causes of action all fail because Plaintiffs do not—and cannot—plausibly allege that Conagra's conduct was deceptive or that reasonable consumers would be misled. In any event, the causes of action all independently fail for the reasons set forth below.

### A. Plaintiffs Fail to Plead Their Claims with Particularity (Counts I–III & VI).

Plaintiffs' fraud-based claims must be dismissed for the additional reason that Plaintiffs' allegations fail to meet Rule 9(b)'s heightened pleading standard.[8] *See, e.g.*, *Cristia*, 2022 WL 17551552, at *5 (dismissing claim for deception because "plaintiff provides only conclusory factual allegations to suggest that unspecified 'consumers' agree with her subjective interpretation of the label"); *Kerkorian v. Samsung Elecs. Am., Inc.*, No. 1:18-cv-00870-DAD-SKO, 2019 WL 6918293, at *4 (E.D. Cal. Dec. 18, 2019) (dismissing fraud-based claims where conclusory allegations failed to "give defendants notice of the particular misconduct"). Plaintiffs'

---

[7] Courts have rejected similarly conclusory claims because no link existed between the plaintiffs' allegations and the defendant's actual product. *See, e.g.*, *Tarzian*, 2019 WL 5064732, at *4 ("To satisfy the pleading standards," plaintiff must "draw a connection between the common industry practice and the actual practice used by [defendant]."); *Indiviglio v. B&G Foods, Inc.*, No. 22 CV 9545 (VB), 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023) ("generalized statement about 'industry' is not enough to adequately allege" a plausible claim for relief about the challenged product); *see also Vitort v. Kroger Co.*, No. 3:20-cv-01317, 2021 WL 6061864, at *6 (D. Or. Sept. 13, 2021) (finding no material misrepresentation because plaintiff's "claims are based on an assumption the added sugars in the Product do not derive from fruit sources"), *R. & R. adopted*, No. 3:20-cv-01317, 2022 WL 294904 (D. Or. Feb. 1, 2022), *aff'd*, No. 22-35185, 2023 WL 3143690 (9th Cir. Apr. 28, 2023).

[8] Counts I–III and VI are subject to Fed. R. Civ. P. 9(b)'s heightened pleading standard. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089–90 (N.D. Cal. 2017) (FAL, CLRA, and UCL fraudulent prong (Counts I–III)); *Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 225 (D. Mass. 2017) (Mass. Gen. Laws ch. 93A (Count VI)).

allegations do not meet Rule 9(b)'s heightened pleading standard because Plaintiffs fail to allege (i) the circumstances of their individual purchases (including, even, what Products they purchased), (ii) the amount of STPP or water allegedly added to the Products, (iii) at what point in the manufacturing process STPP and added-water were introduced, (iv) any information about the weight of the Product, or how Plaintiffs' purchasing decision was impacted by the weight of the Products, or, critically, (v) "what a reasonable consumer would believe about [the] [P]roducts." *See Wertymer v. Walmart, Inc.*, No. 23 CV 14700, 2024 WL 2126732, at *4 (N.D. Ill. Feb. 22, 2024). The Court, therefore, should dismiss Plaintiffs' FAL, CLRA, UCL fraudulent prong, and Mass. Gen. Laws ch. 93A causes of action. *See id.* ("failure to sufficiently allege deceptive conduct dooms" fraud-based claims); *Swiatek v. CVS Pharmacy, Inc.*, No. 23-CV-01523, 2024 WL 1328801, at *4 (N.D. Ill. Mar. 28, 2024) (dismissing complaint that "fail[ed] to allege facts to support the allegation"); *Swartz v. Coca-Cola Co.*, No. 21-cv-04643-JD, 2023 WL 4828680, at *3 (N.D. Cal. July 27, 2023) (same).

## B. Plaintiffs' Breach of Express and Implied Warranty Claims (Counts VII-VIII) Should be Dismissed for Numerous Reasons.

Plaintiffs' breach of express warranty claim fails under Illinois and California law because they "ha[ve] not pled a sufficient basis to state a claim for privity" or satisfied any relevant exception. *Johnston v. Kashi Sales, L.L.C.*, 626 F. Supp. 3d 997, 1011 (S.D. Ill. 2022) (absent privity, Illinois law requires plaintiffs to show they engaged in "direct dealing" with the defendant); *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) (without privity, under California law, plaintiffs must "point to a specific and unequivocal written statement" on which they relied that "became part of the basis of the bargain").[9] Plaintiffs'

---

[9] Plaintiffs claim Conagra "expressly warranted that [the Products] were 100% whole fish." FAC ¶ 132. But as explained in Section II.A, *supra* at 8–10, the Products' label advertised the Product as containing

express warranty claim fails under Massachusetts law because Plaintiffs point to no "express promise" by Conagra that was false. *Lima v. Post Consumer Brands, LLC*, No. 1:18-CV-12100-ADB, 2019 WL 3802885, at *9 (D. Mass. Aug. 13, 2019) (dismissing express warranty claim because "Honey Bunches of Oats brand name nor imagery" made an actionable express promise where product both contained and tasted like honey). And Plaintiffs' express warranty claim fails under New York and Illinois law because they did not allege they provided pre-suit notice of their breach of warranty claim. *Johnston*, 626 F. Supp. 3d at 1011 (Illinois); *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 458 (S.D.N.Y. 2022) (New York).

Plaintiffs' breach of implied warranty claim likewise fails under any applicable law. California and New York require vertical privity for implied warranty claims which is not met when purchases are made from a third-party retailer (as opposed to the manufacturer), as is the case here. *See* FAC ¶¶ 5-7 (alleging that Plaintiffs purchased the products at supermarkets). *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F. Supp. 3d 911, 920 (C.D. Cal. 2021); *Anderson*, 607 F. Supp. 3d at 458-59 (S.D.N.Y. 2022). Massachusetts and California require a plaintiff to show the seller "breached some 'affirmation of fact or promise' it made concerning the product," which as explained above, Plaintiffs fail to identify. *Bush v. Well Pet, LLC*, 534 F. Supp. 3d 179, 183–84 (D. Mass. 2021); *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1178 (N.D. Cal. 2022). And because the Products are food, Plaintiffs' implied warranty of merchantability claim fails under all applicable laws because Plaintiffs failed to allege the food was inedible or "unsuitable for [its] intended and ordinary use." *Warren*, 574 F. Supp. 3d at 119 (New York); *Bush*, 534 F.Supp.3d at 184 (Massachusetts); *DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 704 (N.D. Ill. 2023) (Illinois); *Gagetta*, 646 F. Supp. 3d at 1178–79 (California).

---

"100% Whole Fish **Fillets**." (emphasis added). Thus, Plaintiffs do not point to any "unequivocal written statement" to sustain their express warranty claim.

### C.    The Unjust Enrichment Claim (Count IX) Should Be Dismissed.

Plaintiffs' unjust enrichment claim fails under Illinois and New York law because their consumer deception claims fail, and unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery. *Ibarrola*, 83 F. Supp. 3d at 761; *Warren,* 574 F. Supp. 3d at 120 (unjust enrichment claim "must be dismissed as duplicative" under New York law when it rests on same allegations as a complaint's other claims for consumer deception that are rejected). Plaintiffs do not "identify any independent theory of unjust enrichment that does not rise or fall with [their] statutory claims."[10] *Robie*, 2021 WL 2548960, at *7; *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 165 (S.D.N.Y. 2022) (unjust enrichment claims fail "where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action"). Plaintiffs' claim also fails under California law because they failed to "show some fraud," as required. *Myers-Taylor v. Ornua Foods N. Am., Inc.*, No. 3:18-CV-01538-H-MDD, 2019 WL 424703, at *6 (S.D. Cal. Feb. 4, 2019); *Souter v. Edgewell Pers. Care Co.*, No. 20-CV-1486 TWR (BLM), 2022 WL 485000, at *12 (S.D. Cal. Feb. 16, 2022) ("Absent fraud, Plaintiff has no claim for unjust enrichment."); *Dawson v. Better Booch, LLC*, No. 23-CV-1091-DMS-DEB, 2024 WL 535882, at *5 (S.D. Cal. Feb. 9, 2024) (unjust enrichment claim requires plausible allegations "that Defendant engaged in unlawful conduct and has therefore been 'unjustly enriched.'"). And under Massachusetts law, Plaintiffs may not bring a claim for unjust enrichment at all because an "adequate remedy at law" is available under their Chapter 93A claim. *Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 116 (D. Mass. 2022), *appeal*

---

[10] Plaintiffs attempt to plead their unjust enrichment claim in the alternative, but the only additional allegation supporting an independent claim separate and apart from the alleged conduct at issue in their consumer protection claims is that retention of the benefit conferred on Conagra would be "unjust and inequitable because Defendant omitted that the Product was dangerous." FAC ¶ 143. But aside from that conclusory allegation, Plaintiffs fail to explain how the breaded fish Products were "dangerous." No other allegations support an alternative, standalone unjust enrichment claim.

*dismissed*, No. 22-1255, 2022 WL 4844337 (1st Cir. July 18, 2022) (mere "availability of a Chapter 93A claim bars any unjust enrichment claim").

### D.     Plaintiffs Lack Standing to Pursue Injunctive Relief.

Plaintiffs lack Article III standing to pursue any injunctive relief because they do not face any risk of future harm. It is settled in the Seventh Circuit that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014). Indeed, "District courts within the Seventh Circuit have concluded that allegations of deceptive practices do not support standing for injunctive relief." *Johnston v. Kashi Sales, L.L.C.*, 626 F. Supp. 3d 997, 1004 (S.D. Ill. 2022). Where a consumer "is already aware of the [Defendant's] allegedly deceptive sales practices," the consumer "lacks standing to obtain injunctive relief." *Id.* at 1005.

Here, Plaintiffs cannot establish that they are at a substantial risk of future harm because they now know the purported "truth" concerning the "100% Whole Fish Fillet" representation and the label discloses that the Products contain STPP to retain moisture. *See, e.g.*, *Conrad v. Boiron, Inc.*, No. 13 C 7903, 2015 WL 7008136, at *2 (N.D. Ill. Nov. 12, 2015), *aff'd* 869 F.3d 536 (7th Cir. 2017); *Conrad*, 869 F.3d at 542 (Now "fully aware of the fact that [the product] is nothing but sugar water," plaintiff lacked standing to seek injunctive relief); *Camasta*, 761 F.3d at 741 ("[N]ow aware of [defendant's] sales practices, [plaintiff] is not likely to be harmed by the practices in the future" and thus "not entitled to injunctive relief."); *Cristia*, 2022 WL 17551552, at *2 ("Because plaintiff now knows that the juice product is processed after being cold pressed, she is unlikely to be harmed by defendant's packaging in the same way in the future.").

### E.     Plaintiffs' Proposed Nationwide Class Should Be Dismissed.

***First***, Plaintiffs allege they purchased the Products ***only*** in California, New York, and Massachusetts. FAC ¶¶ 5–7. In analyzing similar claims, multiple courts in this District have

found that plaintiffs lack standing for out-of-state classes based upon the alleged experiences of other unidentified customers[11] and "routinely dismiss or strike class claims where named [p]laintiffs seek to represent proposed class members from other states" because they "do not possess the same interest and have not suffered the same injury as any proposed out-of-state class members" whose claims are governed by out-of-state laws. *Brown v. Auto-Owners Ins. Co.*, No. 1:21-cv-02597, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022) ("Postponing the threshold standing question until after discovery would accomplish nothing. Discovery cannot fix the fact that Plaintiffs' have no injury under [other states'] law[s]."). Thus, where plaintiffs attempt to assert class claims under the laws of the states in which they did not allegedly purchase the products at issue—*i.e.*, any state **other than** California, New York, and Massachusetts—those claims should be dismissed. *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *5 (N.D. Ill. Feb. 26, 2019) (collecting cases) (same).[12]

**Second**, Plaintiffs' proposed nationwide unjust enrichment class claims should be stricken because those claims fail under Rule 23(b)(3)'s predominance requirement due to the multiple, material conflicts among states' laws that would render the class unmanageable and subject litigants to different (and conflicting) legal rules. *Harris v. Rust-Oleum Corp.*, No. 21-cv-01376, 2022 WL 952743, at *5 (N.D. Ill. Mar. 30, 2022); *Cowen v. Lenny & Larry's, Inc.*, No. 17 CV 1530, 2017 WL 4572201, at *4-5 (N.D. Ill. Oct. 12, 2017) (rejecting nationwide class for

---

[11] Plaintiffs purport to assert claims on behalf of a nationwide class for breach of implied warranty (Count VII), breach of express warranty (Count VIII), and unjust enrichment (Count IX). FAC ¶¶ 120, 130, 138.

[12] At minimum, if Plaintiffs advance past the motion to dismiss stage (which they should not for all the reasons articulated herein), the Court should determine that it would "be inappropriate to engage in wide-ranging discovery premised on a prospect as to which there is substantial doubt—namely, [Plaintiffs'] ability to assert causes of action created by other states for the benefit of other individuals injured in those other states." *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1001–02 (N.D. Ill. 2017) (Tharpe, J.) (observing that it would be appropriate to "stay discovery on such claims until such time as the question of class certification is squarely before the Court").

unjust enrichment claim at motion to dismiss stage). Courts in this district routinely dismiss nationwide unjust enrichment classes as improper due to "material conflicts among the fifty states' laws with respect to unjust enrichment claims." *See Harris*, 2022 WL 952743, at *5 (collecting cases); *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *14 (N.D. Ill. Sep. 30, 2019) ("As multiple courts in the Seventh Circuit have commented, district courts remain reluctant to manage nationwide classes for these types of claims [like unjust enrichment].").[13] Like many courts in this District have done, the Court should conclude that Plaintiffs' nationwide unjust enrichment class fails at this stage "because the difficulty in Plaintiffs' claims stem[s] from the variance in the substantive law, which discovery cannot cure." *Fullerton*, 2019 WL 4750039, at *15; *accord Harris*, 2022 WL 952743, at *5. Plaintiffs' claims on behalf of non-California, New York, and Massachusetts putative class members should be dismissed.

## CONCLUSION

The FAC should be dismissed in its entirety because Plaintiffs lack Article III standing to pursue any of their claims. Plaintiffs also fail to plausibly allege reasonable consumers would be deceived by the Products' labeling, particularly where context confirms that the Products must contain some ingredients in addition to "100% Whole Fish Fillets." Finally, Plaintiffs fail to plausibly allege that Conagra, as opposed to fish "processors" generally, engages in the practice of short weighting. Because all of Plaintiffs' claims fail as a matter of law, Conagra respectfully requests that the Court dismiss Plaintiffs' FAC in its entirety and with prejudice.

---

[13] "[U]njust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, Nos. 05 C 4742, 05 C 2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006). These conflicts span a range of substantive issues, including: (a) the lack of a single, controlling definition of unjust enrichment and its substantive elements, *True v. Conagra Foods, Inc.*, 2011 WL 176037, at *9 (W.D. Mo. Jan. 4, 2011); (b) the applicable limitations period and when it begins, *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 519 (D. Minn. 2014); and (c) the degree of misconduct necessary to state a claim, *Thompson v. Bayer Corp.*, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009).

DATED: August 23, 2024       _/s/ Tobin J. Taylor_
                              Tobin J. Taylor

                              *Counsel for Defendant Conagra Brands, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on August 23, 2024, with the Court and served electronically through the CM/ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case.

*/s/ Tobin J. Taylor*
Tobin J. Taylor