**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CINDY PAPPERT, WILLIAM MARTIN, and CATHERINE FOSTER, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-04835 |
| Plaintiffs, | |
| v. | |
| CONAGRA BRANDS, INC., | |
| Defendant. | |

---

**OPPOSITION TO MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT**

---

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Carl Malmstrom
111 West Jackson, Suite 1700
Chicago, IL 60604
Phone: 312-984-0000
E-Mail: malmstrom@whafh.com

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (General Bar)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Yeremey O. Krivoshey
(General Bar)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ...........................................................................................................1

II.    ARGUMENT ................................................................................................................2

       A.     ConAgra's Arguments For Dismissal Of The Nationwide Class Are Procedurally Improper And Premature ............................................................................2

            1.     ConAgra's Standing Argument Is Contrary To *Payton* And The Weight Of Authority In This District............................................................2

            2.     ConAgra's Argument For Dismissal Of The Nationwide Class Ignores The Allegations ...........................................................................4

            3.     Dismissal Of Class Allegations Under Rule 12(b) Violates The Plain Meaning Rule ...................................................................................6

       B.     Plaintiffs Have Article III Standing Under The Substantial Similarity Rule...........8

       C.     Whether A Reasonable Consumer Would Be Deceived By The Packaging Is A Factual Dispute That Cannot Be Resolved On The Pleadings .............................10

       D.     Plaintiffs Sufficiently Allege Breach Of Express Warranty Claims.....................18

       E.     Plaintiffs Sufficiently Allege Breach Of Implied Warranty Claims.....................19

       F.     Plaintiffs Sufficiently Allege Unjust Enrichment Claims Under All Relevant State Laws .................................................................................................................20

            1.     ConAgra Offers No Independent Basis To Dismiss The Unjust Enrichment Claim Under Illinois, New York, and California Law ...........20

            2.     ConAgra's Adequate Remedy At Law Argument Lacks Merit.................20

       G.     Plaintiffs May Pursue Injunctive Relief................................................................22

III.   CONCLUSION............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. City of Chicago*,
34 F.4th 594 (7th Cir. 2022) ........................................................................ 5

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................................... 3

*American Kitchen Delights, Inc. v. Signature Foods, LLC*,
2018 WL 1394032 (N.D. Ill. Mar. 20, 2018) ............................................. 21

*Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*,
547 F.3d 48 (1st Cir. 2008).......................................................................... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 15

*Bakopoulos v. Mars Petcare US., Inc.*,
592 F. Supp. 3d 759 (N.D. Ill. 2022).......................................................... 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 15

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) .................................................................Passim

*Bohen v. ConAgra Brands, Inc.*,
2024 WL 1254128 (N.D. Ill., Mar. 25, 2024) .......................................Passim

*Brothers v. Portage Nat. Bank*,
2007 WL 965835 (W.D. Pa. Mar. 29, 2007) ................................................ 6

*Business Guides, Inc. v. Chromatic Comms. Enters., Inc.*,
498 U.S. 533 (1991) ....................................................................................... 6

*Calderon v. Procter & Gamble Co.*,
674 F. Supp. 3d 483 (N.D. Ill. 2023)............................................................. 9

*California Gasoline Spot Mkt. Antitrust Litig.*,
2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ........................................... 21

*Casas v. Victoria's Secret Stores, LLC*,
2014 WL 12708972 (C.D. Cal. Oct. 20, 2014) ............................................ 7

*Chiappetta v. Kellogg Sales Co.*,
   2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ...................................................... 17

*City of Chicago v. Barr*,
   961 F.3d 882 (7th Cir. 2020) ............................................................................ 24

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) .......................................................................... 19

*Corley v. United States*,
   556 U.S. 303 (2009) ......................................................................................... 24

*Crane v. Sexy Hair Concepts, LLC*,
   2017 WL 8728961 (D. Mass. Oct. 10, 2017) ............................................. 21, 22

*Curran v. Bayer Healthcare LLC*,
   2019 WL 398685 (N.D. Ill. Jan. 31, 2019) ................................................. 22, 23

*Curtis v. 7-Eleven, Inc.*,
   2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) ..................................................... 8

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................ 23

*Deposit Guaranty Nat. Bank v. Roper*,
   445 U.S. 326 (1980) ........................................................................................... 6

*Dumont v. Reily Foods Co.*,
   934 F.3d 35 (1st Cir. 2019) ................................................................. 11, 15, 16

*Durango v. U.S.*,
   864 F.2d 520 (7th Cir. 1988) .............................................................................. 6

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) .............................................................................. 3

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) .............................................................. 5

*Garland v. Children's Place, Inc.*,
   2024 WL 1376353 (N.D. Ill. Apr. 1, 2024) ........................................................ 8

*Havrilla v. Centene Corp.*,
   2024 WL 1932916 (N.D. Ill. May 2, 2024) ........................................................ 3

*In re Asacol Antitrust Litig.*,
   907 F. 3d 42 (1st Cir. 2018) ............................................................................... 3

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................. 4

*In re Chevrolet Bolt EV Battery Litigation*,
    633 F. Supp. 3d 921 (E.D. Mich. 2022) ........................................................... 5, 6

*Johnsons & Son, Inc.*,
    2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) ...................................................... 23

*Kirkbride v. The Kroger Co.*,
    2022 WL 2703960 (S.D. Ohio July 12, 2022) ................................................. 5, 6

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. Mar. 9, 2020) ......................................................... 15

*Leiner v. Johnson & Johnson Consumer Companies, Inc.*,
    215 F. Supp. 3d 670 (N.D. Ill. 2016) ........................................................... 23, 24

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ............................................................... 11, 15, 16

*Marshall v. Grubhub Inc.*,
    2021 WL 4401496 (N.D. Ill. Sept. 27, 2021) ..................................................... 7

*Massachusetts v. Mylan Laboratories*,
    357 F. Supp. 2d 314 (D. Mass. 2005) ............................................................... 22

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ............................................................................ 3

*Meyer v. Nat'l Tenant Network, Inc.*,
    10 F. Supp. 3d 1096 (N.D. Cal. 2014) ............................................................. 6, 7

*Molsbergen v. United States*,
    757 F.2d 1016 (9th Cir. 1985) .......................................................................... 21

*O'Connor v. Ford Motor Co.*,
    567 F. Supp. 3d 915 (N.D. Ill. 2021) ............................................................... 19

*Olson v. Cross*,
    2024 WL 361200 (N.D. Ill. Jan. 30, 2024) ..................................................... 4, 8

*Patenaude v. Orgain, LLC*,
    594 F. Supp. 3d 108 (D. Mass. 2022) ............................................................... 21

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) ......................................................................... 3, 4

*Peters v. Aetna Inc.*,
  2 F.4th 199 (4th Cir. 2021) ................................................................. 3, 4

*Renn v. Otay Lakes Brewery, LLC*,
  2023 WL 6050582 (S.D. Cal. Sept. 14, 2023) ....................................... 9

*Rodriguez-Suris v. Montesinos*,
  123 F.3d 10 (1st Cir. 1997) ................................................................. 21

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and N.W. Indiana*,
  786 F.3d 510 (7th Cir. 2015) ......................................................... 10, 24

*Schneider v. Mott's LLP*,
  2022 WL 4314207 (S.D. Ill. Sept. 19, 2022) ...................................... 13

*Schorsch v. Hewlett-Packard Co.*,
  417 F.3d 748 (7th Cir. 2005) ............................................................... 5

*Slowinski v. BlueTriton Brands, Inc.*,
  2024 WL 3757097 (N.D. Ill. Aug. 9, 2024) .......................................... 2

*Smith-Brown v. Ulta Beauty, Inc.*,
  2019 WL 932022 (N.D. Ill. Feb. 26, 2019) ..................................... 7, 23

*Sosna v. Iowa*,
  419 U.S. 393 (1975) ............................................................................. 4

*Sur. & Indem. Co. v. Krause*,
  2015 WL 3962287 (N.D. Ill. June 29, 2015) ...................................... 21

*Taylor v. Brown*,
  787 F.3d 851 (7th Cir. 2015) ............................................................... 6

*Ulrich v. Probalance, Inc.*,
  2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ........................................ 8

*Updike v. Clackamas Cnty.*,
  2015 WL 7722410 (D. Or. Nov. 30, 2025) ........................................... 7

*Vision Power, LLC v. Midnight Express Power Boats, Inc.*,
  2019 WL 5291042 (S.D. Fla. July 26, 2019) ........................................ 7

*Watkins v. MGA Ent., Inc.*,
  574 F. Supp. 3d 747 (N.D. Cal. 2021) ................................................ 18

*Weaver v. Champion Petfoods USA, Inc.*,
  3 F.4th 927 (7th Cir. 2021) .................................................................. 9

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ................................................................... 11, 12, 15, 17

**Statutes**

Mass. Gen. Law 106 § 2-318 ................................................................... 18

Mass. Gen. Law § 93A ................................................................... 21, 22

**Rules**

Fed. R. Civ. P. 12(b) ................................................................... 6, 7, 10

Fed. R. Civ. P. 12(f) ................................................................... 7

Fed. R. Civ. P. 23(c)(1)(C) ................................................................... 5

Fed. R. Civ. P. 23(f) ................................................................... 7

**Other Authorities**

Restatement (Third) of Restitution, § 4(2) ................................................................... 20

U.C.C. § 2-607(3)(A) ................................................................... 18

U.C.C. §§ 2-313, 2-314 ................................................................... 18

## I. INTRODUCTION

This is a simple case.  The front packaging of Van de Kamp and Ms. Paul's brand frozen fish products state, unequivocally, that they are "100% Whole Fish Fillet[s]."  FAC, ¶ 3.  That statement is false.  Defendant ConAgra uses an industrial filler called sodium tripolyphosphate ("STPP") and extra water to artificially add weight to the fish fillet, which may then ooze out as a white goo when the fish fillet is cooked.  *Id.*  STPP, a suspected neurotoxin, is typically used to manufacture things like rubber, paint, and antifreeze.  *Id.*; *see also id.* at ¶¶ 21-25.  The statement that the subject products are "100% Whole Fish Fillet[s]" is false because the truth is, the products are fish fillet *and* added water *and* added STPP, to make the fish fillet heavier than it really is.

The tiny print on the back of the product packaging, unlikely to be seen by a reasonable consumer, is also misleading because it states that the STPP is added "to retain fish moisture." *Id.* at ¶ 34.  STPP is not added to the fish to "retain" the *fish's* natural moisture.  It is added, instead, to retain the water that has been *manually* added to the fish to artificially bulk up its weight.  *Id.* at ¶35.

ConAgra's primary defense is a strawman argument: namely, it argues that anyone can see that the "100% Whole Fish Fillet" labeling is false because the product is clearly *breaded and seasoned* fish.  ConAgra does not explain how the fact that the fish fillet contains breading or seasoning on top of the fillet would signify to any reasonable consumer that the fish *fillet* is artificially bulked up with excess water and STPP—neither of which have anything to do with the breading or seasoning.  Reasonable consumers viewing a breaded fish fillet product marketed as "100% Whole Fish Fillet" would understand that the *fish fillet* component of the product is "100% Whole Fish Fillet," and not that the breading and seasoning are also "100% Whole Fish Fillet."  Taking ConAgra's argument to its logical but absurd conclusion, the objective statement

1

"100% Whole Fish Fillet" is meaningless and cannot be relied on for anything.  That is a remarkable position to take when talking about the marketing of seafood products.  Conagra's motion to dismiss should be denied.[1]

## II. ARGUMENT

### A.     ConAgra's Arguments For Dismissal Of The Nationwide Class Are Procedurally Improper And Premature

Subject to additional discovery and reserving their right to alternatively pursue narrower multi-state subclasses, Plaintiffs provisionally allege a nationwide class alleging common law claims for breach of warranty and unjust enrichment, but not statutory claims.  *See* FAC, ¶ 38, 120, 130, 138.  ConAgra argues the Court should "dismiss" the nationwide allegations but fails to disclose that Judge Kendall rejected ConAgra's same arguments just a few months ago in *Bohen v. ConAgra Brands, Inc.*, 2024 WL 1254128 (N.D. Ill., Mar. 25, 2024).  ConAgra's arguments fail for three separate reasons.

#### 1.     ConAgra's Standing Argument Is Contrary To *Payton* And The Weight Of Authority In This District

ConAgra first argues that the named Plaintiffs lack standing to pursue claims on behalf of consumers in other states.  *See* MTD, p.24.  There is a split of authority on this precise issue in this District.  "The prevailing view, particularly recently, is that the issue is best framed through the class-certification lens, not standing."  *Slowinski v. BlueTriton Brands, Inc.*, 2024 WL 3757097, at *8 (N.D. Ill. Aug. 9, 2024) (collecting authorities and analyzing the split); *see also Bohen*, 2024 WL 1254128 at *5-6 (holding in a case against ConAgra that the issue of whether plaintiffs can represent claims of individuals outside of plaintiffs' own states is a question for class certification, not standing).  If "a challenge to standing 'would not exist but for the [class-

---

[1] This brief complies with the 25-page limit extension granted by this Court on July 9, 2024 (ECF No. 15).

action] certification[,]' the [Supreme] Court found that it makes more sense to address whether class certification is appropriate prior to addressing whether the plaintiff has standing." *Havrilla v. Centene Corp.*, 2024 WL 1932916, at *11 (N.D. Ill. May 2, 2024) (quoting and explaining *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997)).

More importantly, the majority approach is *required* by the Seventh Circuit's controlling decision in *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002), where the "central issue" pertained to standing and whether the "named plaintiffs may represent a class that include[d] people from other 17 named counties." *See also Bohen*, 2024 WL 1254128 at *6 (citing *Payton* when rejecting the same argument ConAgra makes here). *Payton* held that "class certification issues are … logically antecedent to Article III," and "[t]hus the issue about Rule 23 certification should be treated first [*i.e*, before standing]." *Payton*, 308 F.3d at 680. "This involves defining the class and assessing whether the proposed class representatives can satisfy [the requirements of Rule 23]." *Id.* The rule in *Payton* is consistent with Supreme Court and Circuit Court decisions across the nation. *See*, *e.g.*, *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (collecting authorities).[2]

*Payton* also rebuts ConAgra's argument that the named Plaintiffs here do not have standing to pursue claims based on the laws of other states. In short, they are not required to have such standing because:

> once a class is properly certified, statutory and Article III standing requirements must be assessed with reference *to the class as a whole, not simply with reference to the individual named plaintiffs*. The certification of a class changes the standing aspects of a suit, because "[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff.

---

[2] *See also*, *e.g.*, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("once an individual has alleged a distinct and palpable injury to himself … whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in [Rule 23]"); *In re Asacol Antitrust Litig.*, 907 F. 3d 42, 50 (1st Cir. 2018) (following *Fallick* and similar authorities); *Peters v. Aetna Inc.*, 2 F.4th 199, 241 n.22 (4th Cir. 2021) (same).

*Id.* (Emphasis added).  Put another way, "standing may be established by looking to the rights and interests of the members of the certified class." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1072 (N.D. Cal. 2015) (citing *Sosna v. Iowa*, 419 U.S. 393, 401 (1975)).  If a class is certified that encompasses other states, "there is no question" that the class members would have standing to pursue claims under the laws of their respective states, thereby providing the standing that ConAgra claims is missing now.  *See Jepson v. Ticor Title Ins. Co.*, 2007, WL 2060856 at *1 (W.D. Wash. May 1, 2007).  Under *Payton*, however, the "antecedent" issue is whether Plaintiffs can satisfy predominance and other requirements of Rule 23, which are issues that are not yet before this Court.

### 2.     ConAgra's Argument For Dismissal Of The Nationwide Class Ignores The Allegations

ConAgra argues that Plaintiffs cannot pursue a nationwide unjust enrichment class claim "due to the multiple, material conflicts among states' laws."  MTD, at 24.  There are three problems with that argument.  First, ConAgra acknowledges that Plaintiffs are also seeking a nationwide class with respect to breach of implied and express warranty, *see id.* at 24 n.11, but ConAgra does not argue that variations in state law preclude certification of a nationwide class with respect to those causes of action.  It cannot make such an argument for the first time on reply.  *See Olson v. Cross*, 2024 WL 361200 at *15 (N.D. Ill. Jan. 30, 2024) (Tharp, J.) (holding that arguments raised for the first time in a reply brief are waived).  So, given that ConAgra does not argue there are certification-defeating variations in warranty law, there is no basis to dismiss the nationwide class allegations, at least to the extent they pertain to the warranty claims.

Second, ConAgra's argument is premature because class definitions are always tentative and subject to change.  As the Seventh Circuit has explained, "proposed class definitions are often narrowed or expanded as the parties engage in discovery at the class certification stage."

*Ali v. City of Chicago*, 34 F.4th 594, 603 (7th Cir. 2022); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly modify class definitions"); *see also* Fed. R. Civ. P. 23(c)(1)(C) (a class definition may be altered any time "before final judgment"). Numerous courts have held that it is premature to strike a nationwide class definition for overbreadth because it is a placeholder that almost always changes based on discovery, including by using multi-state subclasses. *See Kirkbride v. The Kroger Co.*, 2022 WL 2703960 at *12 (S.D. Ohio July 12, 2022) (denying motion to strike nationwide class definition because it was "simply a placeholder" subject to change depending on discovery and the scope of the future class certification motion); *In re Chevrolet Bolt EV Battery Litigation*, 633 F. Supp. 3d 921, 947-48 (E.D. Mich. 2022) (following *Kirkbride* and holding it would be premature to strike nationwide allegations because the definition would likely change in discovery); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial").

Here, the FAC expressly alleges that "[s]ubject to additional information obtained through further investigation and discovery," the nationwide class may be narrowed later, "*including through the use of multi-state subclasses to account for material differences in state law, if any*." FAC, ¶ 38 (emphasis added). Given this allegation and the above-cited authorities, dismissing the nationwide class allegation would be premature.

Third, ConAgra does not argue that nationwide class discovery entails any meaningful additional burden, and for good reason: it "would not impose a substantially higher discovery burden on the parties" because the claims "are fundamentally premised on the same alleged facts and course of conduct." *In re Chevrolet Bolt*, 633 F. Supp. 3d at 947. The scope of the class will only affect discovery on the number of products sold and ConAgra's revenues, which in a case

5

like this is typically contained in either a single interrogatory or spreadsheet, regardless of the scope of the class. As other courts have held, any purported additional burden associated with nationwide discovery—particularly in a relatively simple case like this—tends to be exaggerated. *See id.*; *Kirkbride*, 2022 WL 2703960 at *13 ("concerns about the burden of nationwide discovery … counsel for a careful plan of discovery management, not for preemptively striking dozens of states in which viable subclasses still might be formulated.").

### 3. Dismissal Of Class Allegations Under Rule 12(b) Violates The Plain Meaning Rule

The Seventh Circuit and Supreme Court have repeatedly held that courts must "give the Federal Rules of Civil Procedure their plain meaning," *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015), and that they have "no authority to subvert the plain meaning of the federal rules despite harsh results." *Durango v. U.S.*, 864 F.2d 520, 524 (7th Cir. 1988) (internal quotation and citation omitted).[3] By its plain terms, Rule 12(b) pertains to "claim[s] for relief" and Rule 12(b)(6) permits a party to assert that the opposing party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b). "A class action is a procedural device, not a claim for relief." *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d 1096, 1103–04 (N.D. Cal. 2014); *see Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 331 (1980) ("Rule 23 is a procedural right only, ancillary to the litigation of substantive claims"). Hence, it is improper to "dismiss" class allegations under Rule 12(b), particularly when the question of class certification will be resolved later under Rule 23. *See Meyer*, 10 F. Supp. 3d at 1103; *accord*, *e.g.*, *Brothers v. Portage Nat. Bank*, 2007 WL 965835 at *7 (W.D. Pa. Mar. 29, 2007) (Rule 12 tests the sufficiency of "claims," and is not a "vehicle for preempting a certification motion."). None of the decisions cited by ConAgra addressed the plain meaning rule because the plaintiffs in those

---

[3] *See also Business Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 540 (1991) ("We give the Federal Rules of Civil Procedure their plain meaning").

cases never raised it. *See, e.g., Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022 at *5-6 (N.D. Ill. Feb. 26, 2019).[4]

Dismissing class allegations under Rule 12(b) also creates inconsistencies and "redundancies in the Federal Rules." *Meyer*, 10 F. Supp. 3d at 1104; *accord Updike v. Clackamas Cnty.*, 2015 WL 7722410 at *11 (D. Or. Nov. 30, 2015). "[T]he standard of review applied to orders granting motions to dismiss differs from that governing orders granting or denying class certification." *Meyer*, 10 F. Supp. 3d at 1104. Also, "Rule 23(f) provides a mechanism by which a plaintiff (or defendant) can petition for review of a denial (or grant) of class certification under Rule 23, whereas, de facto denials of 'classwide claims' under Rule 12(b)(6) [or (b)(1)] are ineligible for immediate discretionary review (barring exceptional circumstances)." *Casas v. Victoria's Secret Stores, LLC*, 2014 WL 12708972, at *9 (C.D. Cal. Oct. 20, 2014).

To be sure, this Court has held that a motion to strike under Rule 12(f) may sometimes be permissible under "extraordinary" circumstances. *See, e.g., Marshall v. Grubhub Inc.*, 2021 WL 4401496, at *6 (N.D. Ill. Sept. 27, 2021) (Tharp, J.). Even if that proposition could be reconciled with the plain meaning rule, ConAgra did not move to strike the class allegations (*see* ECF No. 26), nor did it argue that any of Rule 12(f)'s criteria apply. *See Vision Power, LLC v. Midnight Express Power Boats, Inc.*, 2019 WL 5291042, at *8 (S.D. Fla. July 26, 2019) ("Midnight Express did not even attempt to argue that the class action allegations are redundant, immaterial, impertinent, or scandalous. Accordingly, Midnight Express' motion to strike the class allegations should be denied."). ConAgra cannot do so for the first time on reply. *See Olson*, 2024 WL 361200 at *15.

---

[4] *See also* Plaintiffs' Opp'n to MTD in *Smith-Brown*, N.D. Illinois Case No. 1:18-cv-00610, ECF No. 122, at pp. 6-7.

**B.** **Plaintiffs Have Article III Standing Under The Substantial Similarity Rule**

ConAgra argues that Plaintiffs lack standing to pursue any claims unless they specifically identify "which of the subject Products they purchased." MTD, at 6. If the Court required, the Plaintiffs could easily amend to identify the specific products they purchased, but as explained below, the existing allegations are sufficient under the prevailing "substantial similarity" rule.[5]

"[T]he majority of courts that have considered the issue 'hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *Garland v. Children's Place, Inc.*, 2024 WL 1376353, at *4 (N.D. Ill. Apr. 1, 2024) (quoting *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017)). "The majority rule here is the majority rule elsewhere. Courts around the country have recognized a named plaintiff's standing to represent a putative class of purchasers who bought substantially similar products." *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384 at *8 (N.D. Ill. Sept. 13, 2022) (collecting cases).[6]

Here, in the FAC, Plaintiffs list the subject products at issue (FAC, ¶ 27); allege that they bought one or more of those products (*id.* at ¶¶ 5-7); allege that the products all had the same, relevant misleading labeling during the relevant period (*id.* at ¶¶ 28-35); and allege that for each product, the labeling is misleading for the same reason. *See id.* at ¶¶ 36. The images shown in Paragraph 29 of the FAC and in ConAgra's request for judicial notice show that apart from the color theme (green vs. blue), the brand name (Van de Kamp vs. Mrs. Paul's), and the specific

---

[5] Plaintiffs withdraw any claims based on fish sticks, which were inadvertently included on the list of subject products.

[6] To be sure, the *Bohen* court adopted the minority view and held that the plaintiffs lacked standing for products they did not buy. However, the court explained that was an issue that "neither party addressed in their briefing," and so the court did not reconcile its analysis with the contrary authorities cited above. *See Bohen*, 2024 WL 1254128 at * 3.

type of fish, the packaging of all the products is substantially similar. The differences are irrelevant to the core issue in this case, which is whether the "100% Whole Fish Fillet" labeling is deceptive when all of the products actually contain STPP and extra water as filler.

In its brief, ConAgra once again overlooks that there is a split of authority while arguing for the minority view, and several of the decisions ConAgra cites do not support its position here. The only appellate decision ConAgra cites, *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927 (7th Cir. 2021), did not hold that a named plaintiff lacks standing to represent class members who bought substantially similar products. Instead, *Weaver* involved the *opposite* situation, where a plaintiff lacked standing to sue based on *dissimilar* products that he did not buy.[7]

ConAgra cites two other district court opinions that support *Plaintiffs'* position, not ConAgra's, because even though the defendant prevailed, the outcome turned in part on the lack of substantial similarity among the subject products. *See Renn v. Otay Lakes Brewery, LLC*, 2023 WL 6050582, at *2 (S.D. Cal. Sept. 14, 2023) ("Defendant also asserts that Plaintiff lacks "standing" because he fails to allege that the labels of the fifteen Products, at issue, are substantially similar to those he allegedly purchased"); *Calderon v. Procter & Gamble Co.*, 674 F. Supp. 3d 483, 489 (N.D. Ill. 2023) ("Calderon expressly alleges that the Pure Zzzs products are sold in several varieties and have a specific (and different) amounts of melatonin per serving"). The fact that those decisions turned on whether the products were substantially similar demonstrates the existence of the substantial similarity rule, because otherwise, the question of whether the products were similar would have been irrelevant.

---

[7] Specifically, the plaintiff in *Weaver* alleged that the statement that a certain dog food brand was "biologically appropriate" was misleading because some batches of the product were contaminated with pentobarbital. *See Walker*, 3 F.4th at 936. However, the plaintiff "lack[ed] standing because he failed to show that the dog food he purchased was at risk of containing pentobarbital." *Id.* So, unlike here, the plaintiff was pursuing claims based on products that were not substantially similar to the products he had purchased.

9

Finally, even if this Court adopts the minority view advocated by ConAgra, dismissal with leave to amend would be the proper outcome, not with prejudice as advocated by ConAgra. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and N.W. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("*Runnion*") ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

**C.    Whether A Reasonable Consumer Would Be Deceived By The Packaging Is A Factual Dispute That Cannot Be Resolved On The Pleadings**

"All of Plaintiffs' deceptive advertising claims rest on the 'reasonable consumer' standard." *Bohen*, 2024 WL 1254128, at *6. "Therefore, Plaintiffs must plead that ConAgra's labels 'are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id*. (quoting *Bell v. Publix Super Markets, Inc*., 982 F.3d 468, 474-75 (7th Cir. 2020)). "Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Id*. (quoting *Bell*, 982 F.3d at 476). "When evaluating deceptive advertising claims, the Court 'should take into account all the information available to consumers and the context in which that information is provided and used.'" *Id*. (quoting *Bell*, 982 F.3d at 477). "The question of whether a label is misleading or deceptive often requires a 'practical and fact-intensive approach' and is typically not a question that should be decided at the motion-to-dismiss stage." *Id*. (quoting *Bell*, 982 F.3d at 478-79). "But a Court may dismiss the claim at the pleading stage 'where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising.'" *Id*. (quoting *Bell*, 982 F.3d at 477-78).

Where a defendant argues that a back-label disclosure dispels any ambiguity about the meaning of a label statement made on the front of a product's packaging, the "plaintiffs' claims survive if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Bell*, 982 F.3d at 476. The Seventh Circuit has "join[ed] our colleagues in at least three other circuits in holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id*. at 476-477 (citing *Dumont v. Reily Foods Co*., 934 F.3d 35, 41 (1st Cir. 2019); *Mantikas v. Kellogg Co*., 910 F.3d 633, 638-39 (2d Cir. 2018); *Williams v. Gerber Prods. Co*., 552 F.3d 934, 939 (9th Cir. 2008)). "In each case, the defendant argued that its fine-print, back-label ingredient list immunized it from claims that more prominent front-label claims were deceptive because a consumer could read the ingredient list." *Id*. at 477. "In each case, a district court had granted a motion to dismiss, and in each case, the appellate court reversed." *Id*. "In each case, there was room to argue about the precise meaning of the front-label claims, such as hazelnuts in coffee beans in *Dumont*, cheese crackers made with "Whole Grain" in *Mantikas*, and fruit juice in drinks for young children in *Williams*." *Id*. "And in reversing each case, our colleagues in the other circuits held that the reasonable consumer standard does not presume, at least as a matter of law, that reasonable consumers will test prominent front-label claims by examining the fine print on the back label." *Id*. The Seventh Circuit "agree[s] with that reasoning in *Dumont*, *Mantikas*, and *Williams*." *Id*.

"Lots of advertising is aimed at creating positive impression in buyers' minds, either explicitly or more subtly by implication and indirection." *Id*. "And lots of advertising and labeling is ambiguous." *Id*. "Deceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning." *Id*.

11

Accordingly, just because a defendant or the Court can think of a "non-deceptive interpretation" of a given labeling claim does not give the Court authority to dismiss under the reasonable consumer standard. *Id*. Dismissal is only appropriate if the plaintiff's interpretation of a label is "unreasonable or fanciful" as a matter of law. *See id*.

Here, Plaintiffs' interpretation of the "100% Whole Fish Fillet" statement is the most plausible and sensible manner to interpret the claim, even when the entire packaging is viewed as a whole. The product packaging leads a reasonable consumer to believe that the fish *fillet* part of the product is "100% WHOLE FISH," meaning that it is literally 100% fish. FAC, ¶ 30. The statement is not disclaimed in any manner, such as "predominantly" whole fish, or "contains" whole fish, or with any asterisk instructing the consumer to look elsewhere as to the "true" meaning of the term. *Id*. But the statement is literally false, as instead of 100% whole fish, the fillet part of the product is packed with STPP and manually added water to increase the products' weight. *Id*. ¶ 36. That reasonable interpretation is bolstered by other statements and depictions on the products' labels. For instance, the front label also prominently states that the fish is "WILD CAUGHT," which supports the notion that the fillet portion of the product would be in the same form as a wild-caught fish – *i.e.*, without artificially added STPP and water. *Id*. ¶ 31. That same interpretation is then bolstered further by representations on the back of the products' packaging, where consumers would find prominent statements that the fish fillet part of the product is "wild caught," "traceable," and similar representations. *See id*. ¶ 33. "The only mention of STPP on the products' labels is buried in fine print in a manner meant to ensure that as few consumers as possible ever see it, with the reference itself being misleading." *Id*. ¶ 34. The disclosure's statement that the STPP was "added to retain moisture" incorrectly suggests that it was added to retain the fish's natural moisture, not water artificially added for weight. *Id*. ¶ 34-35.

Defendant's main argument is that it is not plausible for a consumer to believe that the product was made entirely of fish because it is impossible for a *breaded* fish product to contain only fish. *See gen.* MTD, p. 8-15. Defendant attempts to distinguish negative authority by stating that those cases involved products where it was plausible for the product to be made entirely from a single ingredient. *See* MTD at 15 (citing *Bell*, 982 F.3d at 480-81 ("100% Grated Parmesan Cheese" may plausibly be misleading if not made from solely from cheese because, according to Defendant, parmesan cheese can theoretically be made from 100% parmesan cheese) and *Schneider v. Mott's LLP*, 2022 WL 4314207, at *5 (S.D. Ill. Sept. 19, 2022) (According to Defendant, "'Made From 100% Real Fruit' claim on applesauce plausibly misleading because applesauce is a product capable of being made entirely from real fruit."). Defendant is misconstruing Plaintiffs' allegations.

To be clear, Plaintiffs are not suggesting that a reasonable consumer would believe that the *entirety* of a "breaded" fish product is made from 100% fish. Instead, Plaintiffs allege that a reasonable consumer would believe that the *fish fillet* part of the products is made from "100% Whole Fish." As Defendant readily points out, "the labels convey that the Products contain '100% Whole Fish **_Fillets_**.'" MTD, p. 11 (bolding, emphasis, and underlining in original). Here, it is undisputed that the fish *fillet* portion of the products is not 100% fish. The fact that the purported fish "fillet" is topped with breading or seasoning says nothing about whether it is plausible that a reasonable consumer would believe that the fish "fillet" portion of the product is 100% fish.

The allegations are certainly plausible under *Bell*. In *Bell*, the plaintiffs alleged that the statement "100% Grated Parmesan Cheese" was misleading because the back ingredients disclosed that the product was not in fact 100% cheese, but rather contained additives that made the cheese more shelf stable. *Bell*, 982 F.3d at 474. The plaintiffs alleged that defendants'

"prominent claims that their products are '100% Grated Parmesan Cheese' are deceptive because they are likely to mislead a significant portion of reasonable consumers, who will focus on the prominent '100%' on the front labels without checking the fine print on the back showing that the products are not 100% cheese." *Id.* The Seventh Circuit noted that "[w]ith the time afforded by litigation, we can see how '100% Grated Parmesan Cheese' might be interpreted as claiming only that whatever it contains is '100% grated,' *or perhaps that whatever cheese it contains is '100% Parmesan*.'" *Id.* at 476 (emphasis added). "Another reading, though, and certainly a plausible reading, is that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." *Id.* In other words, the Seventh Circuit believed that all of these interpretations were plausible, and believed that the determination of which of the interpretations reasonable consumers actually believed was a fact question not appropriate for a motion to dismiss. *See id.* Defendants there also argued that even the phrase "100% cheese" was not misleading because the FDA's definition of "grated cheese" allowed the use of additives. *Id.* at 481. As the Seventh Circuit pointed out, however, the problem did not lie with calling the product "grated cheese," but with the addition of the modifier "100%," which could lead a reasonable consumer to believe that the product literally only contained cheese. *Id.* at 481-82.

And so it is here. Defendant argues that one plausible interpretation of the statement "100% Whole Fish Fillet" is that that the fish fillet portion of the products "contain whole fish fillets as opposed to minced fish or a combination of fish species." MTD, p. 15. But as in *Bell*, the alternative interpretations are certainly reasonable as well. As in *Bell*, the "100%" could plausibly mean that "whatever [fish] it contains is '100% [Fish].'" *Bell*, at 476. "Another reading, though, and certainly a plausible reading, is that '100%' applies" to the words "Whole" *and* "Fish Fillet." *See id.* In other words, it is plausible that a reasonable consumer would understand that the product contains "100% Whole" fish, as Defendant argues, and that the same

consumer *also* believes that the "Fish Fillet" is "100% … Fish." Under *Bell*, "[t]hese questions may not be answered as a matter of law simply because lawyers can construe an ambiguous claim in a way that would not be deceptive." *Id*. at 480. "Plaintiffs are entitled to present evidence on how consumers actually understand these labels." *Id*.[8]

The Seventh Circuit's citation to *Dumont*, *Mantikas*, and *Williams* are all instructive. In *Dumont*, the plaintiff alleged that it was deceptive for a coffee styled as "Hazelnut Crème" to not contain any actual hazelnuts, despite another prominent statements on the front of the label stating "freshly ground" and "100% Arabica Coffee." *Dumont*, 934 F.3d at 37-38. There was no image of a hazelnut anywhere on the bag. *Id*. The dissent in *Dumont* pointed out that the package says "Freshly Ground 100% Arabica Coffee," suggesting "that a consumer could read this statement in isolation as saying that the package contains only coffee (and Arabica coffee at that), with no nuts (or anything else)." *Id*. at 41. The majority pointed out that "a consumer might instead read this statement as saying that 100% of the coffee in the package is of the Arabica variety." *Id*. "After all, if there is nothing in the package other than coffee, what does Hazelnut Crème mean to say." *Id*. The majority was careful to note that "[n]one of this is to say

---

[8] Defendant makes a one-sentence argument that Plaintiffs were purportedly required to submit "consumer survey or other evidence" concerning how reasonable consumers interpret the labeling claim at issue. MTD, p. 13. No case that Plaintiffs are aware of has ever *required* such evidence on the pleading stage, where all allegations are presumed true and all inferences must be resolved in Plaintiffs' favor. The plaintiffs in *Bell* provided such evidence voluntarily after the district court incorrectly dismissed their initial complaint, but the plaintiffs in *Dumont*, *Mantikas*, and *Williams* did not. Indeed, at least with respect to Plaintiffs' California claims, extrinsic evidence such as expert testimony and consumer surveys are not even required at class certification or trial. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 565 (N.D. Cal. Mar. 9, 2020) ("California courts have explicitly rejected the view that a plaintiff must produce extrinsic evidence such as expert testimony or consumer surveys in order to prevail on a claim that the public is likely to be misled by a representation under the FAL, CLRA, or UCL." (internal quotations and bracketing omitted). "*Twombly* does not require a court at the motion-to-dismiss stage to consider whether the factual allegations are probably true. [The Supreme Court] made it clear, on the contrary, that a court must take the allegations as true, no matter how skeptical the court may me." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Id*.

that our dissenting colleague's reading is by any means unreasonable." *Id*. "To the contrary, we ourselves would likely land upon that reading were we in the grocery aisle with some time to peruse the package." "That being said, we think it best that six jurors, rather than three judges, decide on a full record whether the challenged label 'has the capacity to mislead.'" *Id*. Here, as in *Dumont*, it is plausible for a consumer to believe that the fish fillet part of the products is 100% fish, *and* (as Defendant contends) believe that 100% of the fish fillet is "whole" fish. But these are factual questions that cannot be decided on a motion to dismiss.

In *Mantikas*, the plaintiffs alleged that Cheeze-It crackers were misleadingly labeled as "whole grain" or "made with whole grain" when the products were not "predominantly" made from whole grain, despite in fact containing whole grain. *Mantikas*, 910 F.3d at 635. The defendant argued that reasonable consumers would not be misled because the back and side of the box disclosed exactly what amount of whole grain the product contained, along with a list of all other ingredients. *Id*. at 637. Indeed, "enriched white flour," not whole grain, was listed as the first ingredient. *Id*. The Second Circuit disagreed, noting that the defendant's argument that "as a matter of law, it is not misleading to state that a product is made with a specified ingredient if that ingredient is in fact present – would validate highly deceptive advertising and labeling." *Id*. at 638. "Such a rule would permit Defendant to lead consumers to believe its Cheez-Its were made of whole grain so long as the crackers contained an iota of whole grain, along with 99.999% white flour." As in *Mantikas*, the "fish" here is clearly the "primary" ingredient in the products. How a reasonable consumer would understand the "100% … fish fillet" claim is a question of fact.

In *Williams*, the Ninth Circuit held that an ingredient list does not necessarily cure a misleading claim on the front of the packaging. *Williams*, 552 F.3d at 939-40. "[R]easonable consumers expect that the ingredient list contains more detailed information about the product

that *confirms* other representations on the packaging." *Id*. (emphasis added). Here, a reasonable consumer viewing the front representation that the fish fillet part of the products is 100% fish would have no reason to check the ingredient list to see whether the fish was in fast 100% fish, or instead artificially packed with STPP and water.

Though not using the term explicitly, Defendant also effectively argues that the "100% Whole Fish Fillet" statement is puffery. *See* MTD, p. 12-13 (stating that the label claim may be "insufficiently specific"). But the term describes "specific or absolute characteristics of a product capable of testing," and a "reasonable consumer could rely on the statement when making purchasing decisions." *See Bohen*, 2024 WL 1254128, at *8 (denying ConAgra's motion to dismiss based on the argument that the term "Good for the Environment" was non-actionable puffery and describing the standard). This is not, as in *Chiappetta v. Kellogg Sales Co*., 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022), a situation where plaintiffs believed that the term "Strawberry" and a picture on a package of Pop-Tarts meant that the Pop-Tart contained "only strawberries." *See MTD*, p. 13 (discussing *Chiappetta*). This is a product marketed as "100% Whole Fish Fillet," that contains purportedly "Wild Caught" and fully traceable fish. That is a direct, specific, and testable statement – not puffery.

Finally, Defendant has almost four pages of argument concerning Plaintiffs' allegations about short weighting and STPP soaking. *See* MTD, pp. 15-19. It is not clear what Defendant's goal is with these arguments. Plaintiffs are not basing any claims on the net weight of the products. Instead, Plaintiffs' allegations regarding short weighting and STPP soaking explain *why* STPP and water were manually added into the products, and to show Defendant's fraudulent intent, as it knew that the products were not "100% Whole Fish Fillets" when it decided to artificially pump the fish with water and STPP. Notably, both STPP and added water are listed in the ingredient list, so Defendant's argument that Plaintiffs have not sufficiently alleged that

17

Defendant partook in short-weighting or STPP soaking is belied by its own statements on the products' labels. FAC ¶ 34. The fact that STPP and water were added is undisputed.

### D. Plaintiffs Sufficiently Allege Breach Of Express Warranty Claims

ConAgra makes a hodge-podge of undeveloped arguments concerning the express warranty laws of Illinois, California, Massachusetts, and New York. First, ConAgra's own authorities show that under both Illinois and California law, an exception to the privity requirement applies when "the purchaser of a product relied on representations made by the manufacturer in labels or advertising material." *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 758 (N.D. Cal. 2021) (applying California law); *accord Bakopoulos v. Mars Petcare US., Inc.*, 592 F. Supp. 3d 759, 765-66 (N.D. Ill. 2022) (applying Illinois law). Those allegations are present here. *See* FAC, ¶¶ 8, 29 (alleging reliance and representation at issue).

Second, as to Massachusetts law, where there is no privity requirement (*see* Mass. Gen. Law 106 § 2-318), ConAgra simply denies that its packaging includes a false statement. *See* MTD, at 21. That position is rebutted in Section C above.

Finally, as to New York and Illinois law, ConAgra notes that there are no allegations of pre-suit notice (though ConAgra does not deny that it received such notice). The FAC includes allegations that ConAgra received pre-suit notice in connection with the consumer protection claims (FAC, ¶¶ 72, 111). That notice was effective as to Plaintiffs' warranty claims.[9] The failure to repeat the same allegations (especially when Plaintiffs allege that they "incorporate and

---

[9] For instance, Plaintiffs' "pre-suit notice of claims asserted under the CLRA, in compliance with all of the CLRA's requirements" was effective for Plaintiffs' warranty claims because the claims that underpin Plaintiffs' warranty claims are coextensive with Plaintiffs' CLRA claims (FAC ¶ 72). CLRA compliance requires pre-suit notice of 30 days prior to filing a claim for damages. Thirty days is more than sufficient for a common law breach of warranty claim. And, the actual notice letters explicitly stated that they served as "notice for any … other law requiring pre-suit notice" and "[s]erves as notice pursuant to U.C.C. § 2-607(3)(A), U.C.C. §§ 2-313 & 2-314, and any similar state law requirements."

reallege each preceding paragraph as though fully set forth herein" in each cause of action) concerning the warranty claims within the specific cause of action was an oversight, but does not nullify the fact that Plaintiffs did in fact allege that they provided notice to Defendant. To the extent that the Court requires Plaintiffs to repeat those allegations within the warranty causes of action, Plaintiffs request leave to do so.

### E.  Plaintiffs Sufficiently Allege Breach Of Implied Warranty Claims

First, ConAgra argues the implied warranty claims fail under California and New York law due to lack of privity. However, under both states' laws, a "third party beneficiary" exception applies where the plaintiff is the ultimate "intended consumer" of the product, not the intermediary retailer. *See O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 942-43, 946-47 (N.D. Ill. 2021) (applying California and New York law). Other exceptions to privity for breach of implied warranty also apply here, such as "when the plaintiff relies on written labels or advertisements of a manufacturer" and in cases "involving foodstuffs." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

Second, ConAgra argues that the implied warranty claim fails under Massachusetts and California law for failure to allege a false statement. That is simply a rehash of ConAgra's earlier arguments, already addressed in Section C above.

Finally, ConAgra argues that the implied warranty claim fails under all relevant state laws for failure to allege that the food is unsuitable for its intended and ordinary use. However, Plaintiffs allege in the FAC that the labeling is misleading because the subject products contain Sodium Tripolyphisphate ("STPP"), which is "a suspected neurotoxin … registered pesticide[,] and known air contaminant" that "is typically used to manufacture things like rubber, paint, and antifreeze." FAC, ¶ 3; *see also id.* at ¶¶ 16-17. Thus, the question of whether the subject

products are fit for consumption is a question of fact not susceptible to resolution on the pleadings.

### F. Plaintiffs Sufficiently Allege Unjust Enrichment Claims Under All Relevant State Laws

#### 1. ConAgra Offers No Independent Basis To Dismiss The Unjust Enrichment Claim Under Illinois, New York, and California Law

With respect to the unjust enrichment claim under Illinois, New York, and California law, ConAgra argues that the statutory consumer protection and unjust enrichment claims stand or fall together. *See* MTD, at 22. Accordingly, ConAgra's argument fails to support dismissal for the same reasons addressed in Section C above.

#### 2. ConAgra's Adequate Remedy At Law Argument Lacks Merit

ConAgra argues that the Massachusetts Plaintiff's unjust enrichment claim must be dismissed because she has adequate remedy at law available under her Chapter 93A claim. That argument lacks merit for four reasons. First, "Massachusetts courts generally follow the Restatement," including the Restatement of Restitution. *See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 56 (1st Cir. 2008). Under the Restatement, "[a] claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." Restatement (Third) of Restitution, § 4(2).

Second, as this Court has held when rejecting similar arguments made by ConAgra here, Rule 8 permits a plaintiff to pursue both equitable and legal remedies in the alternative. *See American Kitchen Delights, Inc. v. Signature Foods, LLC*, 2018 WL 1394032 at *7 (N.D. Ill. Mar. 20, 2018) (Tharp, J.) (denying motion to dismiss equitable claims alleged in the alternative to legal claims). Rule 8 does not permit courts to treat a plaintiff's legal claim as an admission

that she has an adequate remedy at law foreclosing an alternative equitable claim. *See*, *e.g.*, *Devs. Sur. & Indem. Co. v. Krause*, 2015 WL 3962287, at *3 (N.D. Ill. June 29, 2015) ("the Federal Rules of Civil Procedure expressly permits litigants to present alternative and inconsistent claims…. Such claims should not be invoked as an admission against an alternative or inconsistent claim"); *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 20 (1st Cir. 1997) ("Especially at the early stages of litigation, a party's pleading will not be treated as an admission precluding another, inconsistent, pleading."); *accord Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985). Plaintiffs here expressly allege that they lack an adequate remedy at law, and that the unjust enrichment claim is pleaded "in the alternative to legal claims, as permitted by Rule 8." FAC ¶¶ 140, 149.[10]

Third, as other courts have held, non-restitutionary disgorgement of profits is not the equivalent of legal damages, and therefore the availability of legal damages under MGL 93A does not displace such equitable relief. *See Crane v. Sexy Hair Concepts, LLC*, 2017 WL 8728961, at *6 (D. Mass. Oct. 10, 2017) (legal damages under MGL 93A was not an adequate remedy displacing disgorgement of profits under an unjust enrichment theory); *California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *8 (N.D. Cal. Mar. 29, 2021) ("*California Gasoline*") (availability of damages did not preclude non-restitutionary disgorgement). Here, as in *Crane* and *California Gasoline*, Plaintiffs seek non-restitutionary disgorgement of ConAgra's profits through their unjust enrichment claim. *See FAC, ¶ 149* ("Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that ConAgra obtained as a

---

[10] The sole opinion that ConAgra cites, *Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 116 (D. Mass. 2022), overlooked the rule against treating alternative pleadings as an admission against another claim, because the plaintiff in that case never raised the argument in its opposition brief. *See Patenaude v. Orgain, LLC*, D. Mass Case No. 4:21-cv-40019, Opposition Brief, ECF No. 23, at p. 28.

result of its unjust conduct."). At this juncture, it is too early to determine whether damages are an adequate alternative to recovering ConAgra's profits under an unjust enrichment theory. *See Massachusetts v. Mylan Laboratories*, 357 F. Supp. 2d 314, 324 (D. Mass. 2005) (holding that the question of whether legal damages provided an adequate remedy displacing an unjust enrichment claim seeking disgorgement of profits was premature at the pleading stage).

Fourth, ConAgra overlooks that the Massachusetts Plaintiff is pursuing her unjust enrichment claim on behalf of both a putative nationwide class and a Massachusetts subclass (or potentially a multi-state subclass), but the MGL 93A class is *only* asserted on behalf of a Massachusetts subclass. *See* FAC ¶¶ 103, 138. That is a sufficient basis to reject ConAgra's argument because the legal damages under MGL 93A are unavailable to the majority of putative class members. *See Crane*, 2017 WL 8728961, at *6 (rejecting same argument ConAgra makes here because "the complaint here pleads unjust enrichment on behalf of a national class, to whom Chapter 93A claims, which must relate to conduct occurring substantially in Massachusetts, are not available").

### G. Plaintiffs May Pursue Injunctive Relief

Although ConAgra is correct that there is a *general* rule that a consumer's awareness of deceptive practices may eliminate standing to pursue injunctive relief, in *Curran v. Bayer Healthcare LLC*, 2019 WL 398685 at *4-5 (N.D. Ill. Jan. 31, 2019), Judge Alonso held that an exception applies if the plaintiff alleges that he "would purchase the product again in the future if he could be assured that the product was accurately labeled …." As explained in *Curran*:

> Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018)); *accord Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at \*14 (N.D. Ill. Feb. 26, 2019). The FAC includes the type of allegation that *Curran* and *Davidson* held support injunctive relief in a false advertising case:

> Each Plaintiff remains interested in purchasing the products at issue. However, they cannot know for certain whether the false labeling has been or will be corrected. The composition of the products may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiffs will be unable to make informed decisions about whether to purchase the subject products. Plaintiffs are further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the product's marketing is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

FAC, ¶ 10.

Moreover, as other courts have explained when rejecting the same argument ConAgra makes here, "the injunctive provisions of consumer protection statutes such as ICFA [and the other consumer protection statutes at issue in this case] could never be invoked to enjoin deceptive practices if the complaining consumer's standing dissipated the moment she discovered the alleged deception and could no longer be fooled." *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 215 F. Supp. 3d 670, 673 (N.D. Ill. 2016); *see also Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-CV-05828, 2018 WL 1695421, at \*3 (N.D. Ill. Mar. 29, 2018) ("To accept the defendant's interpretation of *Camasta* would preclude standing for injunctive relief in practically all false advertising cases."). "[O]ne of the most basic interpretive canons" is that "a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" *Corley v. United States,* 556 U.S. 303, 314 (2009); *accord City of Chicago v. Barr*, 961 F.3d 882, 898–99 (7th Cir. 2020). The approach adopted by Judge Alonso in *Curran,* is consistent with this rule because it preserves the

injunctive relief provisions of consumer protection statutes; whereas the contrary approach advocated by ConAgra would render those provisions superfluous and void.

## III.    CONCLUSION

The Court should deny ConAgra's motion in its entirety.  If the Court determines that the pleadings are deficient in any respect, Plaintiffs request leave to amend.  *See Runnion*, 786 F.3d at 519.

Dated:  September 23, 2024                          Respectfully submitted,

                                                      /s/    Joel D. Smith

                                                   **SMITH KRIVOSHEY, PC**
                                                   Joel D. Smith (General Bar)
                                                   867 Boylston Street, 5th Floor, Ste. 1520
                                                   Boston, MA 02116
                                                   Phone: 617-377-7404
                                                   E-Mail:  joel@skclassactions.com

                                                   **SMITH KRIVOSHEY, PC**
                                                   Yeremey O. Krivoshey
                                                   (General Bar)
                                                   166 Geary Street, Ste. 1500-1507
                                                   San Francisco, CA 94108
                                                   Phone: 415-839-7000
                                                   E-Mail:  yeremey@skclassactions.com

                                                   **WOLF HALDENSTEIN ADLER
                                                   FREEMAN & HERZ LLP**
                                                   Carl Malmstrom
                                                   111 West Jackson, Suite 1700
                                                   Chicago, IL 60604
                                                   Phone: 312-984-0000
                                                   E-Mail: malmstrom@whafh.com

                                                   *Attorneys for Plaintiffs*