# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CINDY PAPPERT, et al.,               )
                                     )
Plaintiffs,                          )        No. 24-cv-04835
                                     )
v.                                   )        Judge John J. Tharp, Jr.
                                     )
CONAGRA BRANDS, INC.,                )
                                     )
Defendant.                           )
                                     )

## MEMORANDUM OPINION AND ORDER

The plaintiffs in this case claim they were duped into thinking the fillets in their frozen fish products were comprised of fish—and only fish. But in reality, the plaintiffs say, the manufacturer ConAgra added sodium tripolyphosphate ("STPP") and water to "pump up" the fish and add weight. ConAgra challenges the sufficiency of the plaintiffs' complaint under Rules 12(b)(6) and 12(b)(1), but the Court finds that the complaint contains sufficient factual allegations to state a claim premised on ConAgra's allegedly deceptive statements about the content of its fish fillet products.

## BACKGROUND

Defendant Conagra Brands, Inc. manufactures a variety of frozen fish products under the brand names Van de Kamp and Mrs. Paul's. Am. Compl. 6 ¶ 27. The plaintiffs, William Martin, Cindy Pappert, and Catherine Foster, each purchased Van de Kamp or Mrs. Paul's frozen fish products "several times over the last few years." *Id.* at 1 ¶¶ 5–7.[1] Martin, Pappert, and Foster live in California, New York, and Massachusetts, respectively, and each purchased the fish products at supermarkets in their home states in 2022 or 2023. *Id.*

---

[1] The Court assumes all of the factual allegations in the complaint are true for purposes of this motion.

Plaintiffs take issue with the packaging of the following products, each of which contains the words "100% Whole Fish Fillets" on the front of the package: Van de Kamp's Crispy Battered Fillets, Crispy Haddock Fillets, Crunchy Breaded Fillets, and Beer Battered Fillets, and Mrs. Paul's Crispy Battered Fillets, Crunchy Breaded Fillets, Beer Battered Fillets, and Lightly Breaded Haddock Fillets.[2] *Id.* at 6 ¶ 27.



*Id.* at 6 ¶ 29. The ingredient list, however, tells an arguably different story: the first ingredient is "Pollock (Pollock, Sodium Tripolyphosphate [Added to Retain Moisture])." *Id.* at 8 ¶ 32. The ingredient list is on the back of the box, in fine text. *Id.*

---

[2] ConAgra points out that the Van de Kamp's and Mrs. Paul's Fish Sticks, contained in the complaint's list of offending products, do not contain the "100% Whole Fish Fillets" claim; the plaintiffs agree those products should be dropped from this lawsuit. Resp. 8 n.5, ECF No. 32.



*Id.* at 8 ¶ 32.

The plaintiffs allege that "[t]he term "100% Whole Fish Fillet" is misleading because, in fact, the products are fish combined with STPP and water." *Id.* at 10 ¶ 36. Prior to purchasing the products, "[e]ach Plaintiff reviewed and relied on the product packaging[,] . . . including the representation that the products were 100% whole fish." *Id.* at 2 ¶ 8. They say that if they "had known the products were falsely labeled, [they] would not have bought them, or would have paid less." *Id.* at 2 ¶ 9.

The plaintiffs filed suit against ConAgra, claiming relief under California's Unfair Competition Law, California's False Advertising Law, California's Consumer Legal Remedies Act, the New York General Business Law, Massachusetts General Laws Chapter 93A, as well as under theories for breach of express and implied warranty and unjust enrichment. The plaintiffs seek to represent a California class, a Massachusetts class, a New York class, and a nationwide

3

class. *Id.* at 10 ¶ 37. ConAgra moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), arguing both that the plaintiffs lack standing to bring this action and that they fail to state a plausible claim for relief.

## DISCUSSION

On a motion to dismiss, the Court accepts the pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewed in this light, a complaint must state a facially plausible claim to relief to overcome the motion to dismiss. *Id.*

Each theory is called a "count" in the complaint. "Counts" are the authorized device for asserting distinct claims—that is, claims "founded on a separate transaction or occurrence"—*see* Rule 10(b), but are often improperly employed to assert different legal theories in support of a claim. As the late Judge Shadur explained, "the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law 'cause of action' approach, rather than the federal concept of 'claim for relief.' That is not what Rule 10(b)'s last sentence defines as the proper role for any such separation of a pleading into different counts." *Bonestroo, Rosene, Anderlik & Assocs., Inc. v. Devery*, No. 05-cv-02184, 2006 WL 1005284, at *11 (N.D. Ill. Apr. 12, 2006) (citation removed). Because each "count" in the plaintiffs' complaint relies on the same factual allegations (*i.e.*, that each product contains the label "100% Whole Fish Fillets" but the fillets really had STPP and water added), the "counts" are simply different theories of relief on that claim.

ConAgra's motion to dismiss, in part, challenges individual theories in the complaint. Rule 12(b)(6) empowers courts to dismiss claims, not individual legal theories or causes of action per se. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("A motion to dismiss under

4

Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."); *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014) ("[I]t is factual allegations, not legal theories, that must be pleaded in a complaint."). But a claim that cannot be supported under any identifiable legal theory is not a plausible claim for which relief can be granted, and is thus susceptible to dismissal on a Rule 12(b)(6) motion. As such, unless ConAgra can show that there is no theory upon which the plaintiffs have stated a claim, the motion will be denied.

## I. Standing

The Court must first determine if it has subject-matter jurisdiction to hear this case. Article III of the Constitution requires that a plaintiff have standing to bring his claim in federal court. In other words, the plaintiffs must have a real stake in the outcome of the case for this Court to have jurisdiction over their claims. ConAgra argues that the plaintiffs lack Article III standing to assert claims based on products that the plaintiffs did not purchase, to seek injunctive relief, and to represent a nationwide class. The Court analyzes each in turn.

### A. Unpurchased Products

ConAgra first takes issue with the injury-in-fact component of standing, arguing that the plaintiffs did not allege which of the products they purchased. Mot. Dismiss Mem. 6, ECF No. 27. The complaint alleges that Plaintiffs William Martin and Cindy Pappert "ha[ve] purchased the subject Van de Kamp brand products several times over the last few years," and that Plaintiff Catherine Foster "has purchased the subject Van de Kamp and Mrs. Paul's brand products several times over the last few years." Am. Compl. 1–2 ¶¶ 5–7. The complaint further states that "[f]or each Plaintiff, if he or she had known the products were falsely labeled, the Plaintiff would not

have bought them, or would have paid less." *Id.* at 2 ¶ 9. That constitutes an injury in fact. *See Halim v. Buffalo Wild Wings*, No. 23-cv-01495, 2026 WL 444686, at *2 (N.D. Ill. Feb. 17, 2026).[3]

ConAgra maintains that the complaint fails to plead injury absent detailed allegations about the products each plaintiff purchased, citing to a variety of opinions holding that plaintiffs must purchase a specific product to have standing to sue. *Id.* at 6–7. The plaintiffs respond that because all of the packaging for ConAgra's fish fillet products is substantially similar, and the allegedly deceptive nature of that packaging is identical, they have standing to assert claims for class members who purchased any of the subject products that they themselves did not purchase. Resp. 8–10. ConAgra replies that the plaintiffs' argument misses the mark, arguing that the question is not one of standing to represent other class members, but standing to sue in the plaintiffs' own right. Reply 1–2, ECF No. 33.

ConAgra is correct. The plaintiffs must establish standing in their own right before the question of whether they can assert the claims of a putative class can be addressed. "At this stage of the case, there is no class and plaintiffs cannot bypass the 'irreducible constitutional minimum' of Article III standing for their individual claims." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (quoting *Bakopoulos v. Mars Petcare US, Inc.*, No. 20-cv-06841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))). And in order to establish their own standing, the plaintiffs must adequately identify the deceptively labeled product(s) that they purchased. This is plain. Imagine that the plaintiffs did not purport to represent a class but were bringing this suit only to redress their own

---

[3] As this Court discussed in *Halim*, the argument (advanced here by ConAgra) that the plaintiffs need to allege they did not receive the benefit of the bargain or that they paid a price premium is unavailing. *Halim*, 2026 WL 444686, at *2 ("[C]ourts in this district have recognized that a plaintiff adequately alleges an injury-in-fact by saying that he would have paid less or not bought the product absent misleading labeling.").

6

alleged injuries; they could not do so by invoking injuries that other consumers experienced in making their purchases of the ConAgra fish fillet products.

The salient question, then, is whether the plaintiffs have adequately alleged that they were injured by any of those products. ConAgra says no, because the plaintiffs have not specifically identified the products they purchased. Without identifying the specific product the plaintiffs purchased, ConAgra contends, the plaintiffs cannot allege that they suffered an injury-in-fact as a result of any of its purchases. But the complaint specifically alleges that each of the plaintiffs made several purchases of some product or products the complaint identifies as being deceptively labeled. That is sufficient, say the plaintiffs, to allege the plaintiffs' injury-in-fact from deceptive conduct.[4]

As to this issue, the Court agrees with the plaintiffs—albeit with a caveat. The plaintiffs allege that they were deceived by the labeling used on a group of products and, with one exception, the allegedly deceptive labeling did not vary among the products of that group. That exception pertains to the "fish stick" product referenced in the complaint, which did not contain the challenged "100% Whole Fish Fillets" statement on its packaging (and was described as "minced fish" rather than as fish fillets). Inclusion of the fish stick products in the complaint creates the possibility that the ConAgra products previously purchased by the plaintiffs did not include the fish fillet products allegedly marketed as "100% Whole Fish," but were rather fish sticks that did not bear the allegedly deceptive label. After ConAgra pointed this problem out, however, the plaintiffs responded by withdrawing their claims as to the fish stick product. That leaves only the plaintiffs' claims arising from the eight products advertised on the labeling as "100% Whole Fish

---

[4] ConAgra also challenges the adequacy of the plaintiffs' allegations of fraud under Rule 9(b). That issue is addressed *infra* in Part III.

Fillets." Each plaintiff avers that he or she purchased at least one of those products and in the absence of any difference between the allegations with respect to those products the Court finds that the complaint adequately alleges the conduct on which the plaintiffs' claims are based. *See, e.g.*, *Daly v. FitLife Brands, Inc.*, No. 22-cv-00762, 2023 WL 6388112, at *6 (N.D. Ill. Sep. 29, 2023) (Article III standing is not defeated by the fact that the plaintiff seeks to represent class members who purchased products "substantially similar" to the products purchased by the plaintiff, so long as the plaintiff himself demonstrates that he has standing); *Calderon v. Procter & Gamble Co.*, 674 F. Supp. 3d 483, 489 (N.D. Ill. 2023) (no standing to pursue claim based on a variety of a melatonin products where unpurchased product was materially different in dosage size).

That a plaintiff purports to bring on behalf of a class claims based on products he did not purchase presents a different question—namely whether he is an adequate representative for a class comprising allegedly deceptive products that he did not buy. In the class action context, the class representative must "demonstrate the requisite case or controversy between themselves personally and [the defendants]." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Otherwise, "there can be no confidence of 'a real need to exercise the power of judicial review.'" *Id.* at 508 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974)). But a class representative's individual standing is all that is required. Once the representative has "alleged a distinct and palpable injury to himself . . . [he] may have standing to seek relief on the basis of the legal rights and interests of others." *Warth*, 422 U.S. at 501. This principle is the foundation of any class action. As another court has explained, "[e]very time a lead plaintiff prosecutes an action on behalf of a class, she brings claims based on injuries she did not personally suffer—in other words,

claims she could not have advanced individually." *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 778 (S.D.N.Y. 2012).

With this in mind, it is clear why ConAgra's argument does not carry the day. The plaintiffs need only show the existence of a justiciable case or controversy with respect to their own claims. Because they have done so, they have demonstrated a legitimate need for judicial review without "piggy-back[ing] on the injuries of the unnamed class members." *Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002).

Ultimately, the issue here is not whether the plaintiffs were injured (which would constitute a legitimate Article III challenge), but whether the gap between the plaintiffs' injuries and the injuries of potential absent class members is so wide as to disqualify them as appropriate class representatives or render the class definition too broad. These questions can—and must—be considered at the class certification stage, but they do not pose a threshold Article III problem in this case.

### B. Injunctive Relief

ConAgra next argues that the plaintiffs lack Article III standing to seek injunctive relief because they have not established a likelihood of future harm. Because "standing is not dispensed in gross[,] . . . plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431. As a general rule, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Instead, plaintiffs seeking an injunction must demonstrate they are "immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citation modified).

The injury at the core of this case is rooted in ConAgra's alleged deception: because of the "100% Whole Fish Fillets" labels, the plaintiffs contend that they thought they purchased one thing when they actually purchased another. But by filing this lawsuit, the plaintiffs implicitly admit that they now know what they bought. This puts them in a tough spot as far as injunctive relief is concerned. As the Seventh Circuit has recognized, future deception generally becomes implausible once past deception is revealed. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) ("Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future."). Even if the "100% Whole Fish Fillets" labels are in fact unlawfully deceptive, the plaintiffs cannot credibly claim they will be duped by them again.

Perhaps recognizing as much, the plaintiffs articulate their theory of future harm in slightly different terms. They assert that each plaintiff "remains interested in purchasing the products at issue. However, they cannot know for certain whether the false labeling has been or will be corrected . . . Plaintiffs are further likely to be repeatedly misled by Defendant's conduct." Am. Compl. 2 ¶ 10.

This theory of harm also misses the mark. The Court accepts, as it must, the plaintiffs' stated desire to purchase the products again. The Court also accepts that they may refrain from doing so because they distrust the labels in question. It is unclear, however, how any of this amounts to a cognizable Article III injury. Uncertainty alone is a far cry from a concrete harm. *See Clark v. Eddie Bauer LLC*, No. 21-cv-35334, 2024 WL 177755, at *4–5 (9th Cir. Jan. 17, 2024) (Bea, J., concurring in part and dissenting in part) (explaining that an inability to rely on marketing practices "does not have a historical or common-law analogue" and thus does not constitute an Article III injury under *TransUnion*). Furthermore, the plaintiffs do not explain why, having discovered ConAgra's misrepresentations after purchasing some of the products, they could not

do so before purchasing additional products. Nor can the plaintiffs establish standing by claiming that, absent injunctive relief, they will opt to go without a product they would otherwise buy. Such self-imposed "injuries" rarely (if ever) confer standing to seek an injunction. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013).

The plaintiffs counter that a finding of no standing here "would preclude standing for injunctive relief in practically all false advertising cases." Resp. 23 (quoting *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-cv-05828, 2018 WL 1695421, at *3 (N.D. Ill. Mar. 29, 2018)). That would render the injunctive provisions of the state laws at issue superfluous, plaintiffs contend. *Id.* This argument fails for two reasons. First, *Carrol* is distinguishable: there, the plaintiffs alleged that the defendant's sunscreen advertised a false SPF rating. *Carrol*, 2018 WL 1695421, at *1. The plaintiffs had to test the products to discover that information, *id.* at *2, unlike here, where the plaintiffs can simply read the label to check for additives. *See* Reply 14. Second, the requirement of Article III standing only applies in federal courts. Just because a federal court cannot hear a state law claim for an injunction does not mean a state court cannot, leaving the possibility of injunctive relief open in some forum. *See, e.g.*, *Guracar v. Student Loan Sols., LLC*, 332 Cal. Rptr. 3d 742, 751 (Cal. Ct. App. 2025) ("The California Legislature is . . . free to grant standing to sue in California courts absent concrete harm.").

In short, there is no theory under which the plaintiffs have demonstrated an imminent risk of concrete injury. As such, Article III bars their claims for injunctive relief.

### C. Nationwide Class

ConAgra's final standing argument is that the plaintiffs lack standing to represent proposed class members from states other than California, New York, and Massachusetts (where the named plaintiffs bought the products). It asserts that potential plaintiffs in other states have not suffered

the same injury as the named plaintiffs, because their claims would be governed by different laws. Mot. Dismiss Mem. 23–24. The plaintiffs respond both that the argument is premature and that 12(b) is not the proper vehicle to dismiss class allegations, because it refers only to "claim[s] for relief." Resp. 5–7.

This Court confronted the question of whether plaintiffs have standing to represent class members in other states in *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998–1002 (N.D. Ill. 2017). There, this Court remarked that it:

> questions whether [the plaintiff's] claims under state consumer protection statutes present a question of constitutional standing at all. [The plaintiff] claims injury based on [the defendant's] conduct; if he suffered a concrete and particularized injury, he has constitutional standing to pursue his claim. As discussed above, [the plaintiff] has adequately alleged that he has standing. The question of what legal theories [the plaintiff] may advance as bases for recovering damages for his injury does not implicate Article III standing; the availability of any particular legal theory presents a question of substantive law.

*Id.* at 1000; *see also Franco v. Chobani, LLC*, 789 F. Supp. 3d 584, 599 (N.D. Ill. 2025). So too here. As discussed above, the plaintiffs have adequately alleged that they themselves have standing.

This Court went on to note in *Liston* that the nationwide class allegations did, however, pose potential issues for the plaintiffs' ability to meet the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23. *Liston*, 254 F. Supp. 3d at 1001. Indeed, ConAgra argues the plaintiffs cannot meet the predominance prong for a class action. Mot. Dismiss Mem. 24–25.[5] For that reason, just as in *Liston*, the Court anticipates staying discovery on the

---

[5] ConAgra's Rule 23 argument—namely, that the difference in substantive law between the states is so significant that they will fail the predominance requirement—is not fully developed in its briefs. ConAgra did not describe the alleged "multiple, material conflicts among states' laws that would render the class unmanageable." Mot. Dismiss Mem. 24. The Court therefore finds it premature to rule on that question at this stage. That does not preclude ConAgra from re-raising this argument upon a motion for class certification, however.

nationwide class allegations because it would be "inappropriate to engage in wide-ranging discovery premised on a prospect as to which there is substantial doubt." *Liston*, 254 F. Supp. 3d at 1001.

Because the Court declines to dismiss the nationwide class allegations at this stage on the merits of the parties' arguments, it need not reach the plaintiffs' argument that 12(b) does not procedurally permit such a dismissal.

## II.     The Reasonable Consumer Standard

As both parties correctly observe, all of the plaintiffs' consumer protection theories are judged by the "reasonable consumer" standard; that is, they "'require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020)).. A label need not be literally false to be deceptive; it need only be "likely to mislead a reasonable consumer in a material respect." *Beardsall*, 953 F.3d at 973. As the movant, ConAgra must "demonstrate—as a matter of law—that [the plaintiffs'] reading is unreasonable." *Vital Proteins LLC v. Ancient Brands, LLC*, No. 22-cv-02265, 2023 WL 157956, at *5 (N.D. Ill. Jan. 11, 2023). If ConAgra succeeds, dismissal is justified. *Bell*, 982 F.3d at 477 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified."). Dismissal on the pleadings, though, "is appropriate only in rare situations." *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 831 (N.D. Ill. 2021).

ConAgra offers three reasons a reasonable consumer would not be deceived by the "100% Whole Fish Fillets" label: first, the products do in fact contain 100% fish fillets; second, the plaintiffs' interpretation of the label is fanciful; third, context demonstrates that the label is not ambiguous and thus not deceptive. Each of these arguments rests on ConAgra's contention that it would be obvious to any reasonable consumer that the products are not made *only* of fish, because they are clearly breaded. ConAgra thinks that any reasonable consumer would understand the packaging to say that the products are made using real fish fillets, not that there are no other ingredients. But the plaintiffs do not take issue with the inclusion of the breading or any ingredients other than STPP and water. STPP and water, unlike the breading, were both allegedly added to the fillet itself rather than the product as a whole. *See* Am. Compl. 8 ¶ 33 (alleging that "STPP and added water [were] pumped into the fish at Defendant's processing centers"). So the plaintiffs read the label to mean that the fillet part—and only the fillet part—of the fish product is 100% fish, and nothing else.[6] In other words, "[the plaintiff] offers a plausible reading of the packaging, and [the defendant] offers another. That's not a reason to dismiss the claim." *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 705 (N.D. Ill. 2020).

ConAgra, in a Notice of Supplemental Authority, urges this Court to follow the lead of *Hicken v. Quaker Oats Co.*, No. 22-cv-06043, 2024 WL 4953783 (N.D. Ill. Dec. 2, 2024), in which Judge Kendall determined that the label "Simply Granola: Oats, Honey, Raisins & Almonds" was not deceptive despite the fact that the product contained other ingredients. *Id.* at *3. But *Hicken* is

---

[6] ConAgra protests that this is an impermissible reframing of the complaint that the plaintiffs set forth for the first time in their response brief. Reply 4. But on a motion to dismiss, the Court makes all reasonable inferences in the nonmovant's favor. What's more, a party need not even articulate a legal theory in the complaint, only facts supporting a claim for relief. So the factual allegations that the labels say "100% Whole Fish Fillets," Am. Compl. 6 ¶ 29, and that STPP and water were added to the fish, Am. Compl. 10 ¶ 36, are sufficient to support this so-called "reframing."

meaningfully different from the case at hand. The court in *Hicken* reasoned that "'granola' is not a kind of food that has a designated and agreed upon ingredient list that any reasonable customer would understand based on the phrase 'simply granola.'" *Id.* at *2. Not so for "100% Whole Fish Fillets," which has an agreed upon ingredient list: fish. Judge Kendall, moreover, specifically noted that "when a plaintiff plausibly alleges that a label does make a statement about exclusivity, such as '100% Grated Parmesan Cheese,' dismissal is inappropriate," *id.* at *3, referencing the Seventh Circuit's decision in *Bell v. Publix Super Markets, Inc.*

Indeed, the Seventh Circuit's decision in *Bell* controls. The plaintiffs in *Bell* alleged that the label "100% Grated Parmesan Cheese" was deceptive because the products at issue contained not only Parmesan, but also cellulose powder and potassium sorbate. 982 F.3d at 474. Despite the fact that both of those ingredients were listed on the back of the product, the Seventh Circuit nonetheless held that the plaintiffs had stated a claim. *Id.* at 476–77. The court reasoned:

> With the time afforded by litigation, we can see how "100% Grated Parmesan Cheese" might be interpreted as claiming only that whatever it contains is "100% grated," or perhaps that whatever cheese it contains is "100% Parmesan." Another reading, though, and certainly a plausible reading, is that "100%" applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated.

*Id.* ConAgra seizes on that final line, saying that "it is evident from the available context that the Products contained additional ingredients other than fish, unlike the grated cheese at issue in *Bell*." Mot. Dismiss Mem. 15. But, as the plaintiffs note, the Seventh Circuit also endorsed a possible reading of the label as saying that the ***cheese*** in the product is all Parmesan—just like here, where a possible reading of the label is as saying that the ***fillet*** in the product is all fish. The plaintiffs offer a plausible reading of the label, which they allege is false. That is sufficient to state a claim.[7]

---

[7] ConAgra also takes issue with the plaintiffs' claims of "short-weighting," which is allegedly the practice of artificially adding weight to fish. Am. Compl. 1 ¶ 1. ConAgra points out that the complaint contains no allegations about the weight of the products or whether ConAgra

### III. FRCP 9(b) Pleading Requirements

For claims that sound in fraud, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Specifically, the complaint must identify the 'who, what, when, where, and how' of the alleged fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Claims premised on allegations of deceptive conduct are subject to this heightened pleading standard; the plaintiffs' claims rest on the allegation that the label on the subject products is deceptive.

ConAgra contends that the complaint does not meet 9(b)'s pleading standard because it does not include allegations about the circumstances of the plaintiffs' purchases, the amount of STPP or water added to the products, when the STPP and water were added to the products, the weight of the products, or what a reasonable consumer would think about the products. Mot. Dismiss Mem. 20. The complaint, however, alleges the following: that the label on the products was deceptive, that they reviewed the label prior to purchasing, that the fish fillet had something other than what they expected, and that they suffered damages because they would have paid less or not purchased the products absent the deceptive label. That covers the "who," "what," and "how" of the fraud. The plaintiffs also allege that they purchased the products in 2022 and 2023 at California, New York, and Massachusetts supermarkets, which covers the "when" and "where." The Seventh Circuit has said that "[n]othing more is needed." *Vanzant*, 934 F.3d at 739.

---

itself used STPP for that purpose. Mot. Dismiss Mem. 15–19. The plaintiffs now clarify that they do not base their claims on the products' weights or the practice of short-weighting. Resp. 17–18. It is difficult to understand, then, how the plaintiffs were able to allege, in the first three paragraphs of the operative complaint, that "short weighting" is a fraudulent and dangerous practice used by Conagra "on a massive scale." Am. Compl. 1 ¶¶ 1–3. The Court trusts that the plaintiffs had a good faith basis for including what would otherwise constitute baseless calumny.

\*     \*     \*

Having concluded that the complaint states a claim based on its consumer protection theories, the Court does not reach the warranty or unjust enrichment theories. *See Hobbs v. Gerber Prods. Co.*, 2018 WL 38615171, at \*4 (N.D. Ill. Aug. 14, 2018) ("If one of [the plaintiff's] theories suffices to support her claim . . . the question of whether her alternative theories are also viable will be irrelevant to the question of the survival of the complaint."). Because the plaintiffs have standing to bring this action, and the complaint contains sufficient factual allegations to state a claim, ConAgra's motion to dismiss the complaint is denied, except as to the plaintiffs' ability to seek injunctive relief.

Date: April 29, 2026

John J. Tharp, Jr.
United States District Judge

17